## IN RE SHANE P.*
### (AC 19483)

O'Connell, C. J., and Lavery and Landau, Js.[1]

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 18—officially released June 13, 2000

*Lawrence Alexander,* for the appellant (respondent mother).

*Mary K. Lenehan,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*David T. Stone,* for the minor child.

*Opinion*

LAVERY, J. The respondent mother[2] appeals from the judgment of the trial court terminating her parental

---

[2] The trial court terminated the parental rights of both respondent parents. In this opinion, we address only the appeal by the respondent mother and refer to her as the respondent.

rights with respect to her minor child, Shane P. She claims that the court improperly (1) found that no parent-child relationship existed between the respondent and Shane, (2) considered in the adjudication stage of the proceedings conduct that allegedly occurred after the filing of the termination petition, (3) failed to consider the possibility of the respondent's early release from prison and (4) violated the eighth amendment to the United States constitution in terminating her parental rights. We affirm the judgment of the trial court.

In a memorandum of decision, filed February 4, 1999, the court found the following facts. The respondent married Shane's father in 1986, and the couple in 1988 had their first child, B. The respondent had graduated from high school and completed three years of college. She was introduced to drugs by her husband and became addicted. In 1991, after a series of arrests, the respondent and her husband left B in the care of the child's maternal grandparents, where he has remained. Despite their inability to care for B, the respondent and her husband in 1992 had another son, J. Two years later, the respondent and her husband left J with the child's maternal grandparents as a result of the persistent marital, drug and criminal justice problems that the respondent and her husband experienced.

Shane was born prematurely on July 31, 1995, with a positive toxicity for opiates and went through withdrawal. The presence of drugs in Shane's system may have been due to the respondent's methadone treatment, although she admitted to using cocaine early in her pregnancy. On October 3, 1995, with her husband, Shane and J in a car with her on a dirt road, the respondent smoked rock cocaine. They were discovered by police, and cocaine and baby formula were found in the car. The respondent was convicted of risk of injury to a child and received a suspended sentence.

On the basis of this incident, the commissioner of children and families (commissioner) obtained an order of temporary custody for Shane and J. The commissioner placed the boys in a foster home,[3] where Shane has remained. On June 10, 1996, the court adjudicated Shane neglected. The court has extended his commitment to the commissioner until June 10, 2000.

From birth, Shane has had special needs. In the first several months of his life, Shane exhibited severe back arching, body tremors, unusual screaming and difficulty keeping down his formula. At twenty-two months, Shane was diagnosed with developmental weaknesses and inconsistencies in the areas of language development, neuromotor functions, behavioral control and possible learning disability. Through the hard work of his foster mother, Shane was placed in a newly created special education program. Although Shane has improved in many areas, he still has frustration problems, oral motor difficulties and is prone to choking.

Shane's foster mother is devoted to him and devotes considerable energy to his development. A pediatrician and psychologist who testified at the respondent's trial complimented the foster mother as committed and understanding. Complaints by the respondent regarding the foster mother's care were investigated and shown to be unsubstantiated. Shane's foster parents love him and would like to adopt him. Shane is quite comfortable and is thriving in his foster environment. Shane refers to the other boys in the foster household as his brothers. He refers to his biological brothers, B and J, as his friends. Shane refers to his foster parents as mommy and daddy. Shane does not look forward to visits with the respondent.

---

[3] In the foster home, J threw toys at Shane and did not get along with the other boys there. The department of children and families returned J to his maternal grandparents.

When the commissioner initially took custody of Shane, the respondent lost the benefits she had been receiving under the Aid to Families with Dependent Children program, which she had been using for methadone maintenance. The respondent became ill and relapsed into heroin use. After visiting Shane a few times in 1995, the respondent's whereabouts became unknown to the department of children and families (department). Beginning in January, 1996, she failed to make scheduled visits. Over the next several months, the respondent committed numerous crimes such as possession of narcotics, forgery, larceny and failure to appear in court. In July, 1996, the respondent was arrested on a charge of robbery committed by a boyfriend while she and B waited in a car. While driving from the scene, the respondent ran over a bystander's foot. The respondent was convicted of robbery, risk of injury to a child and assault in the second degree. She received a total effective sentence of seven years in prison. Her maximum release date is June 2, 2004.

After being incarcerated in August, 1996, the respondent requested visits with Shane. The department began arranging visits in January, 1997, and the respondent has seen Shane generally on a monthly basis since then. During these visits, the respondent has acted appropriately with Shane, and played with and read to him. Shane has enjoyed the visits, although he does not refer to the respondent as mommy or any similar term. The respondent admitted at trial that Shane does not know her as he should know his mother. The respondent nonetheless has requested numerous pictures of Shane and has sent him handmade gifts for his birthday and Christmas.

The respondent has completed nearly every relevant rehabilitative program available to her in prison, including courses covering substance abuse, parenting and relationship issues. She has received excellent evaluations of her work at prison jobs. The respondent, how-

ever, does have a long history of depression and is unable to receive individual counseling in prison. Upon her release, she will have to enter an intensive rehabilitation program to address her depression and drug addiction.

The court found by clear and convincing evidence that the respondent had failed, for more than one year, to achieve sufficient personal rehabilitation, within the meaning of General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B), as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the child's life. The court also found that the respondent did not have an ongoing parent-child relationship with Shane for more than one year, within the meaning of § 17a-112 (c) (3) (D). The court then determined that it was in Shane's best interest to terminate the respondent's parental rights. This appeal followed.

At the outset, we note our standard of review in termination of parental rights cases. "The standard for review on appeal [in a termination of parental rights case] is whether the challenged findings are clearly erroneous. . . . On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Alissa N.*, 56 Conn. App. 203, 207, 742 A.2d 415 (1999), cert. denied, 252 Conn. 932, 746 A.2d 791 (2000).

Nonconsensual termination proceedings involve a two step process, an adjudicatory phase and a dispositional phase. See Practice Book § 33-1 et seq. "In the

adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence." (Internal quotation marks omitted.) *In re Alissa N.*, supra, 56 Conn. App. 207. "In making the adjudicatory determination, the court is limited to considering events preceding the filing of the termination petition or the latest amendment." *In re Tabitha P.*, 39 Conn. App. 353, 367, 664 A.2d 1168 (1995); see also Practice Book § 33-3 (a). This limitation is inapplicable in the dispositional phase, in which "the trial court can consider all events occurring prior to the date of the dispositional hearing, including those occurring after the filing of the termination petition." (Internal quotation marks omitted.) *In re Kasheema L.*, 56 Conn. App. 484, 488, 744 A.2d 441, cert. denied, 252 Conn. 945, 747 A.2d 522 (2000).

I

The respondent contends that the court improperly concluded that she had no ongoing parent-child relationship with Shane. We disagree.

Applying the standard previously discussed; *In re Alissa N.*, supra, 56 Conn. App. 207; we conclude that the court's conclusion was factually supported. "In considering whether an ongoing parent-child relationship exists, the feelings of the child are of paramount importance. . . . The ultimate question is whether the child has no present memories or feelings for the natural parent." (Citations omitted; internal quotation marks omitted.) *In re Tabitha T.*, 51 Conn. App. 595, 602, 722 A.2d 1232 (1999). The evidence before the court was sufficient to support the conclusion that the child has no present memories of or feelings for the respondent. Shane does not refer to the respondent as his mother and has no memories of any maternal relationship with her. The respondent admitted at trial that Shane does not know her as he should know his mother. Rather,

Shane refers to his foster mother as his mother. Although Shane does warm to the respondent when visiting her in prison, he is not eager to see her initially and seeks comfort from his foster parents after visits.

The respondent attempts to point the blame away from herself and toward the department by accusing it of causing the lack of an ongoing parent-child relationship because it did not provide sufficient visits. The respondent's claim is not utterly groundless. Bureaucratic mismanagement caused the department not to meet the respondent's August, 1996 request to see Shane while in prison until January, 1997. This delay by the department, however, does not absolve the respondent of being the primary cause of creating the lack of a parent-child relationship, which existed at the time the petition was filed. The respondent was not in prison during the first year of Shane's life, and during that time she chose not to develop a relationship with her son. Instead, she lapsed into drug use and disappeared for a number of months. The result of the respondent's conduct is that Shane has no present feelings for or memories of her and views his foster mother as his mother.

Notwithstanding the contentions of the respondent, this case is distinguishable from *In re Valerie D.*, 223 Conn. 492, 499, 613 A.2d 748 (1992), in which our Supreme Court concluded that the state was not permitted to terminate the parental rights of a mother on the basis of no ongoing parent-child relationship. In *In re Valerie D.*, the child was removed from her mother's care from nearly the moment of birth until the adjudication date. Id., 531. Coterminous petitions were filed for custody and termination of parental rights virtually upon the birth of the child. Id., 532. The court concluded that under the circumstances, the petition for temporary custody virtually assured the creation of a ground for termination of parental rights. Id., 533. In other

words, the state's custody of the child created the conditions leading to the lack of an ongoing parent-child relationship.

Here, no such intrusive intermeddling by the state took place. The respondent, and not the department, created the conditions under which the petition for termination was filed. See *In re Lauren R.*, 49 Conn. App. 763, 775, 715 A.2d 822 (1998). For example, as noted previously, the respondent disappeared for months and chose to bring Shane with her while she smoked rock cocaine in her husband's car. Accordingly, we find that *In re Valerie D.*, supra, 223 Conn. 492, is distinguishable and does not impact our decision. We therefore conclude that the court properly found an absence of an ongoing parent-child relationship between the respondent and Shane for more than one year.

II

The respondent also argues that the court improperly considered in the adjudication stage of the termination proceeding conduct that occurred after the filing of the petition in determining that the respondent had failed to achieve personal rehabilitation herself. For the reasons set forth below, we need not and do not decide this claim.

In part I of this opinion, we concluded that the court properly found that there was no ongoing parent-child relationship between the respondent and Shane. This conclusion is supported by ample evidence and was reached by the court without considering postpetition conduct. We need only uphold one statutory ground found by the court to affirm its decision to terminate parental rights. *In re John G.*, 56 Conn. App. 12, 20 n.4, 740 A.2d 496 (1999). "To prevail on her claim that the court improperly terminated her parental rights, the respondent must successfully challenge all of the bases

of the judgment terminating her parental rights. If [any] of the grounds on which the trial court relied are upheld on appeal, the termination of parental rights must stand." (Internal quotation marks omitted.) Id. Accordingly, because one statutory ground for termination properly exists, namely lack of an ongoing parent-child relationship, we need not reach the respondent's claim that the court's finding that she failed to achieve personal rehabilitation was improper.

### III

The respondent argues that the court improperly failed to consider the possibility of an early release from prison in its decision to terminate her parental rights. We disagree.

The court stated in its memorandum of decision that the respondent's maximum release date is June 2, 2004. According to the respondent, a petition is pending for a reduced sentence that may allow her to be released earlier on probation.

The respondent cannot argue the possibility of a release on probation and then bootstrap that possibility into a matter of such importance that without its consideration the court commits reversible error. Neither we nor the trial court can speculate, as the respondent asks us to do, as to what could happen if she is released earlier than expected. Thus, the court did not improperly fail to take into consideration the possibility of an early release.

### IV

In an apparent last desperate search to find a flaw in the court's decision, the respondent raises an eighth amendment challenge. The respondent's brief consists of one page with minimal citations, negligible reasoning and no constitutional analysis. "We are not required to review issues that have been improperly presented to

244

this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *In re Brandon W.*, 56 Conn. App. 418, 425, 747 A.2d 526 (2000). Where a claim receives only cursory attention in the brief without substantive discussion, it is deemed to be abandoned. *In re Shyliesh H.*, 56 Conn. App. 167, 181, 743 A.2d 165 (1999). The respondent's claim with respect to this final claim is inadequate and is deemed abandoned.

The judgment is affirmed.

In this opinion the other judges concurred.