**In re the ADOPTION OF
Female Child, E.N.R.**

Supreme Court of Tennessee,
at Nashville.

April 6, 2001.

John D. Hamilton, Jackson, TN, for the defendant/appellant, Timothy Ray Rose.

Andrea Huddleston, Lawrenceburg, TN, for the plaintiffs/appellees, Amy Jenell Reed and Jonathan Lamar Reed.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Douglas Earl Dimond, Assistant Attorney General, for the intervenor, State of Tennessee.

## OPINION

HOLDER, J., delivered the opinion of the court, in which ANDERSON, C.J., and DROWOTA, BIRCH, and BARKER, JJ., joined.

The parental rights of Timothy Ray Rose, a convicted rapist serving a twelve-year sentence, were terminated by the trial court pursuant to Tenn.Code Ann. § 36-1-113. On appeal, Mr. Rose challenged the constitutionality of § 36-1-113(g)(6) and § 36-1-113(c)(2), which permit termination of an inmate's parental rights under certain circumstances. Mr. Rose's constitutional challenge, however, was raised for the first time in closing argument before the trial court. Accordingly, we hold that the constitutional challenge was not timely made and therefore has been waived except to the extent the challenged statutes are so clearly or blatantly unconstitutional as to obviate the necessity for any discussion. We hold that § 36-1-113(g)(6) and § 36-1-113(c)(2) are not clearly or blatantly unconstitutional. Further, Mr. Rose has failed to comply with Tenn.R.Civ.P. 24.04, Tenn. R.App. P. 32, and Tenn.Code Ann. § 29-14-107(b), which require that the Attorney General be notified of any constitutional challenge to a Tennessee statute. Accordingly, we affirm the judgment of the Court of Appeals.

## BACKGROUND

Timothy Ray Rose was charged with the April 1992 aggravated rape of a five-year-old girl. In January 1993, Mr. Rose began dating Amy Stanford, now Amy Reed. Mrs. Reed became pregnant with Mr. Rose's child in March of that year. Mrs. Reed testified that she learned of the charges against Mr. Rose only after she became pregnant.

E.N.R. was born to the unwed couple in December 1993. Mr. Rose attended the birth and visited the newborn frequently. Mr. Rose did not pay for prenatal care. He did, however, give Mrs. Reed the majority of an income tax refund he received after the birth. In 1994, Mr. Rose pleaded guilty to rape and was sentenced to twelve years. He has been imprisoned in the Tennessee Department of Corrections since April 1994.

Since his incarceration, Mr. Rose has sent $177.09 in child support. Mrs. Reed returned most of this sum to Mr. Rose, at his request, for his use while incarcerated. Mrs. Reed and E.N.R. visited Mr. Rose frequently during his first year of incarceration. Mrs. Reed eventually stopped visiting Mr. Rose because she "finally realized" that he had committed the rape and had been lying to her. Her last visit was in October 1996.

Mrs. Reed married Jonathan Reed in 1997. In August of that year, Mr. and Mrs. Reed filed a petition to terminate Mr. Rose's parental rights regarding E.N.R. and to permit Mr. Reed to adopt E.N.R. At the same time, Mr. Rose filed a petition to legitimize E.N.R. that was provisionally granted.

At the hearing, Mr. Rose, his mother, brother, and aunt, Mr. and Mrs. Reed, Mrs. Reed's mother, and Mr. Reed's mother each testified. At the close of all evidence and just prior to closing argument, the trial court announced "preliminary inclinations" in favor of terminating Mr. Rose's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(6). During clos-

ing argument, Mr. Rose's counsel, for the first time, claimed that § 36–1–113(g)(6) and § 36–1–113(c)(2) were unconstitutional.

Following argument, the trial court held that § 36–1–113(g)(6) had been satisfied and that the child's best interests would be served by termination of Mr. Rose's parental rights. Accordingly, the court ordered Mr. Rose's parental rights terminated, dismissed his petition for legitimization, and granted the adoption petition. Mr. Rose appealed.

Mr. Rose argued on appeal that § 36–1–113(g)(6) violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. The Court of Appeals noted that the procedural requirements for challenging the constitutionality of a statute had not been satisfied in this case. In particular, the Attorney General of Tennessee had not been provided with notice of the challenge as required by Tenn. R. Civ. P. 24.04, Tenn. R.App. P. 32, and Tenn.Code Ann. § 29–14–107(b). A majority of the intermediate court held that under its own case law it had discretion either to remand the case for further proceedings and notice to the Attorney General or to refuse to address the constitutional challenge. It opted for the latter approach and affirmed the trial court's order in all respects. One judge dissented. We granted review.

### ANALYSIS

*The Constitutional Challenge*

■ Tennessee Code Ann. § 36–1–113 governs termination of parental rights. A parent's rights may be terminated only upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination o[f] parental or guardian-

ship rights [enumerated in § 36–1–113(g) ] have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn.Code Ann. § 36–1–113(c). The ground for termination relevant to this case is found at Tenn.Code Ann. § 36–1–113(g)(6). It authorizes termination when:

[t]he parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

Mr. Rose asks this Court to find these statutes unconstitutional. His request, however, comes before the Court in an awkward posture. On October 16, 1997, Mr. Rose, pro se, filed an answer to the Reeds' adoption/termination petition. The constitutionality of the termination of parental rights statutes was not raised. Mr. Rose moved for appointment of counsel on December 4, 1997, and counsel was appointed on December 19, 1997. The termination hearing was held on May 15, 1998. Therefore, Mr. Rose's counsel had approximately five months in which to file a pleading or motion challenging the constitutionality of the statutes in question. No such constitutional challenge was raised.

Careful review of the record shows that Mr. Rose raised no constitutional challenge whatsoever until closing argument during the May 1998 hearing, nearly nine months after the petition for termination had been filed. Immediately prior to closing argument, the trial court made preliminary findings that strongly suggested that it would find from the evidence both that Tenn.Code Ann. § 36–1–113(g)(6) had been proven by clear and convincing evidence and that termination was in E.N.R.'s best interests. Only then does the transcript of

the hearing reference a constitutional challenge to the statutes:

> MR. CHEATWOOD: It's our position that this ground "6," "36–01–113(g)6," is unconstitutionally broad because it's a fundamental right between a parent and a child. And before the state or any governmental body can terminate that or interfere with that ... there has to [be] a compelling interest and a very strict scrutiny applied.
>
> And this law is just, in our position, too broad.... Under this law all that matters is the ten year sentence and "bam," and it's our position that that is unconstitutionally too broad.
>
> But in candor to the Court, the court of appeals in the Eastern Section—As I understand the law, this Court is bound to follow the court of appeals, whether Eastern, Middle or Western.
>
> THE COURT: I think so.
>
> MR. CHEATWOOD:—has decided that that is constitutional, but we would like to reserve that for the possibility of appeal as far as the "unconstitutional" and get on to the best interest of the child standard.

Mr. Rose's counsel then went on to briefly argue against the constitutionality of § 36–1–113(c)(2), the "best interests of the child" test.

The dissenting opinion below correctly noted that "the record does not reveal precisely how Mr. Rose's lawyer challenged the constitutionality of Tenn.Code Ann. § 36–1–113(g)(6)." It went on, however, to opine that the hearing transcript indicates that the parties "were aware that the constitutionality of the statutory grounds for terminating Mr. Rose's parental rights was at issue." We are unconvinced that was the case.

■ The very first sentence of the Reeds' argument in their brief to this Court states, "Petitioners would point out that defendant never raised this constitutional argument before the Trial Court until closing argument at trial." Nothing in the record contradicts this assertion. We are bound by the contents of the record which was Mr. Rose's duty, as the appellant, to make. *See, e.g.,* Tenn. R.App. P. 24(b); *State v. Ballard,* 855 S.W.2d 557, 560 (Tenn.1993); *Harrison v. Arnold,* 558 S.W.2d 831, 833 (Tenn.1977); *Davis v. Boyd,* 192 Tenn. 409, 241 S.W.2d 510, 510–11 (1951). Mr. Rose's challenge to the constitutionality of § 36–1–113 may well have been initiated at some point prior to closing argument. Nevertheless,

> [o]ur Court must make decisions based on matters within the record and not outside of the record. When an appellant or any party seeks review of issues before our Court, that party must prepare a record which conveys a fair and complete account of what transpired in the trial court. If the record is incomplete, this Court is precluded from considering the issues raised.

*State v. Locust,* 914 S.W.2d 554, 557 (Tenn. Crim.App.1995). We are reluctant to creatively construe the present record as showing a properly raised and argued challenge to the constitutionality of a statute when even the implication is unclear.[1]

---

1. We are aware that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Tenn. R. Civ. P. 15.02. In the absence of any indication of implied consent by the Reeds or express or implied disposition by the trial court, we cannot find that the issue of the constitutionality of Tenn.Code Ann. § 36–1–113 was tried. *See Zack Cheek Builders, Inc. v. McLeod,* 597 S.W.2d 888, 890 (Tenn.1980) (discussing Tenn. R. Civ. P. 15.02).

Our reluctance is especially justified given the absence of a ruling by the trial court on the constitutional challenge. Interestingly, the Court of Appeals flatly stated, "The trial court also upheld the constitutionality of Tenn.Code Ann. § 36–1–113(g)(6), relying on *Worley v. State Department of Children's Services,* no. 03A01–9708–JV–00366, 1998 WL 52098 (Tenn.App. Feb.10, 1998) (no Tenn. R.App. P. 11 application filed)." From what source the Court of Appeals derived this notion is unclear. Our review of the record shows that the trial court never affirmatively decided the issue of constitutionality, either orally from the bench or in its written order, and certainly never provided citation to any authority for that supposed ruling.

▪ The transcript, as quoted above, shows that Mr. Rose's counsel referred to a case from the Eastern Section as having held § 36–1–113(g)(6) constitutional. The court did not, however, make any ruling in reference to that case. The court, as an aside, merely agreed with counsel that trial courts generally are bound to follow the Courts of Appeals, irrespective of geographical location. It is too broad a construct of the transcript to view the court's three-word digression, "I think so," as a ruling on the statute's constitutionality based specifically on *Worley.*[2]

▪ Moreover, the court speaks through its order, not through the transcript. *See, e.g., Morat v. State Farm Mut. Auto. Ins. Co.,* 949 S.W.2d 692, 696 (Tenn.Ct.App.1997); *Ladd v. Honda Motor Co.,* 939 S.W.2d 83, 104 (Tenn.Ct.App. 1996). The court's June 6, 1998, termination order is devoid of any adjudication, indeed any discussion, of Mr. Rose's con-

stitutional challenge. The order simply applies § 36–1–113 without additional comment.

Perhaps the Court of Appeals inferred from the trial court's application of § 36–1–113(g)(6) that the trial court impliedly ruled the statute to be constitutional. If any inference should be drawn from the court's silence in this case, however, it is that the court refused to consider a constitutional challenge improperly raised for the first time in closing argument. *Cf. In the Matter of Valle,* 31 S.W.3d 566, 571 (Tenn.Ct.App.2000) (refusing to consider constitutional challenge for first time on appeal in part because record was silent as to facts necessary to disposition of the issue).

▪ Section 36–1–113 is presumed to be constitutional. *See, e.g., In re Burson,* 909 S.W.2d 768, 775 (Tenn.1995). Mr. Rose, as challenger, bore the "heavy burden of overcoming that presumption." *See Helms v. Tenn. Dep't of Safety,* 987 S.W.2d 545, 550 (Tenn.1999). The burden of proof and persuasion rests with him even though § 36–1–113 affects a fundamental right. *WRG Enters., Inc. v. Crowell,* 758 S.W.2d 214, 215–16 (Tenn.1988); *see generally Hawk v. Hawk,* 855 S.W.2d 573 (Tenn. 1993). Numerous Tennessee cases hold that the trial court must be afforded the first opportunity to judge whether a challenger has met those burdens.

▪ A conclusory contention that a statute is unconstitutional, raised for the first time in closing argument and only after the court indicates the merits do not weigh in that litigant's favor, does not present an attractive issue for appellate review. This Court "is a court of appeals

---

**2.** Furthermore, any assertion that the trial court was bound to follow *Worley* was incorrect. *Worley,* as an unpublished decision, was non-binding persuasive authority. *See All-* *state Ins. Co. v. Watts,* 811 S.W.2d 883, 886 n. 2 (Tenn.1991); *State v. Franklin,* 919 S.W.2d 362, 367 (Tenn.Crim.App.1996).

and errors, and we are limited in authority to the adjudication of issues that are *presented and decided* in the trial courts, and a record thereof preserved as prescribed in the statutes and Rules of this Court." *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn.1976) (emphasis added). We find, on this record, that the challenge to the constitutionality of § 36–1–113(g)(6) and § 36–1–113(c)(2) was neither "presented" nor "decided."

 We do not lightly find the constitutional question waived. "[T]he importance of correctly resolving constitutional issues suggests that constitutional issues should rarely be foreclosed by procedural technicalities." *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 457 (Tenn. 1995). No one should be more keenly aware of the importance of the issue at hand than Mr. Rose. Still, this record shows that his argument against the constitutionality of the statute that would deprive him his parental rights was little more than an afterthought.

The record shows that the constitutional challenge in this case was late-raised, minimally addressed, characterized by counsel as mentioned only for the purpose of preserving it for appeal, and perhaps was simply a last ditch effort to overcome the court's preliminary findings in favor of the opposition. To now rely upon the importance of this issue as grounds for appellate review is near hypocrisy given the short shrift it received at trial where it could have, and should have, been fully adjudicated. *See* Tenn. R.App. P. 36 (appellate court need not grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"); *cf. In re Shane*, 58 Conn.App. 234, 753 A.2d 409, 415 (2000) (refusing to consider incarcerated mother's Eighth Amendment challenge to termination of parental rights due to scant analysis in brief).

"Since the constitutional validity of [§ 36–1–113(g)(6) ] was not raised in the trial court no opportunity was afforded for the introduction of evidence which might be material and pertinent in considering the validity of the statute." *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn.1983). In *Lawrence*, we reversed the Court of Appeals, finding that it had improperly adjudicated the issue of the constitutionality of a statute. The only procedural distinction to be made between this case and *Lawrence* is that in *Lawrence*, the appellants failed to challenge the constitutionality of the statute in question "at *any* point in the proceedings in the trial court." *Id.* at 929 (emphasis added). Here, Mr. Rose made some minimal effort to raise the constitutional issue in the trial court, albeit improperly at the last minute.

 This slight distinction might have made some difference if the record provided any indication that the trial court actually adjudicated the constitutionality of this statute. The record does not. We are of the opinion that there is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all. *See Mallicoat v. Poynter*, 722 S.W.2d 681, 682 (Tenn.Ct.App.1986) ("The jurisdiction of this court is appellate only and we consider those issues which are *timely* brought to the attention of the trial court." (emphasis added)). As this issue of the constitutionality of § 36–1–113(g)(6) was not properly raised in the trial court, it has effectively been waived for full consideration on appeal.

> It has long been the general rule that questions not raised in the trial court will not be entertained on appeal and this rule applies to an attempt to make a constitutional attack upon the validity of

a statute for the first time on appeal unless the statute involved is so obviously unconstitutional on its face as to obviate the necessity for any discussion. *Lawrence v. Stanford,* 655 S.W.2d at 929.[3]

We hold that neither § 36–1–113(g)(6) nor § 36–1–113(c)(2) is blatantly unconstitutional. We wish to make clear, as we did in *Lawrence,* that we are not fully adjudging the constitutionality of § 36–1–113. Rather, we are holding only that the Court of Appeals properly refused to consider the constitutional challenge. *See Lawrence,* 655 S.W.2d at 929–30.

### *Failure to Notify the Office of the Attorney General*

There is a defect in addition to Mr. Rose's failure to properly challenge the constitutionality of § 36–1–113(g)(6). The Office of the Attorney General must be notified of any effort to challenge the constitutionality of Tennessee statutes. Such notice is specifically required at the trial level by statute:

> if [a] statute, ordinance, or franchise is of statewide effect and is alleged to be unconstitutional, the attorney general and reporter shall also be served with a copy of the proceeding and be entitled to be heard.

Tenn.Code Ann. § 29–14–107(b). The Tennessee Rules of Civil Procedure also require notice to be provided at the trial level:

> Notice to Attorney General When Statute, Rule or Regulation Is Questioned When the validity of a statute of this state or an administrative rule or regulation of this state is drawn in question in any action to which the State or an officer or agency is not a party, the court shall require that notice be given the Attorney General, specifying the pertinent statute, rule or regulation.

Tenn. R. Civ. P. 24.04. Additionally, notice must be provided whenever a constitutional challenge is raised on appeal. Tenn. R.App. P. 32.

None of these provisions was satisfied in this case. There is no indication that Mr. Rose provided the Attorney General with notice at the trial court level. The absence of notice is unsurprising in light of the fact that his challenge was first made at the close of the case.

Nevertheless, the *court* is required, pursuant to Tenn. R. Civ. P. 24.04, to ensure that notice of the constitutional challenge has been provided to the Office of the Attorney General. This rule makes it clear that the trial court sits as gatekeeper to inquire whether notice has been provided to the Attorney General by the challenger and to suspend proceeding on the constitutional challenge until such notice has been provided and a response from the Attorney General received.

The trial court in this case did not err, however. It is unreasonable to expect a trial court to suspend a proceeding upon the untimely mention by counsel that a statute is unconstitutional. A court is obligated to ensure compliance with the notification rules only after the question of constitutionality has been put properly at issue by the challenger. Because the chal-

---

3. *See also City of Elizabethton v. Carter County,* 204 Tenn. 452, 321 S.W.2d 822, 827 (1958) ("We do not have any sympathy for the practice of raising constitutional questions for the first time on appeal, unless a statute is so obviously unconstitutional on its face as to obviate the necessity for any discussion.");

*Williams v. Realty Dev. Co.,* 161 Tenn. 451, 33 S.W.2d 64 (1930); *Sweeney v. Dep't of Transp.,* 744 S.W.2d 905, 906–07 (Tenn.Ct. App.1987); *Mallicoat,* 722 S.W.2d at 682. *But cf. Vickers v. State,* 176 Tenn. 415, 145 S.W.2d 768, 768 (1940).

lenge in this case was not timely raised, the trial court had no obligation under Tenn. R. Civ. P. 24.04.

### CONCLUSION

Mr. Rose failed to timely raise a challenge to the constitutionality of Tenn.Code Ann. § 36–1–113(g)(6) and § 36–1–103(c)(2). His challenge is, therefore, waived except to the extent that the statutes are clearly or blatantly unconstitutional. The statutes at issue in this case are not clearly or blatantly unconstitutional. Mr. Rose's constitutional challenge has therefore been waived. Failure to timely raise the issue at trial was compounded by the fact that the Attorney General was not properly informed of the constitutional challenge as required by statute and rule. Accordingly, we affirm the judgment of the Court of Appeals. Costs of this appeal are taxed to Appellant, Timothy Ray Rose, for which execution may issue if necessary.