[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Department of Children and Families (hereafter DCF or the department) petitions to terminate the parental rights of the respondent, Bernard S., father of Takwon S. Takwon's mother's parental rights have previously been terminated and are not in issue.
Takwon was born on May 1997. He has an older sibling, Malik, born August 1996. On August, 12, 1997, DCF received an anonymous report alleging that Takwon's mother was neglecting her two children. On April 8, 1998, DCF filed a petition alleging that both children were being neglected by their mother. On May 15, 1998, a judge of the Superior Court issued an ex parte order granting temporary custody of Takwon and his brother to DCF. On May 18, 1998, the court affirmed that order after a hearing.
On May 17, 1998, the court issued specific steps for the respondent to take to facilitate his obtaining custody of Takwon. On July 22, 1998, the court (Brennernan, J.) adjudicated the children neglected and committed them to the custody of DCF. At that time the court also accepted the respondent's acknowledgement of paternity.
From at least August, 1998 until January 12, 1999, the respondent was incarcerated in Connecticut, having been convicted of robbery. During this period of the respondent's incarceration, a DCF social worker gave CT Page 14496 the respondent the address of DCF's office and was in contact with him. The respondent never requested visitation with Takwon nor did he otherwise express concern for him. On January 15, 1999, a DCF social worker received a telephone call from the respondent advising that he had been released from prison and demanding the return of his children. The worker informed the respondent that the department's plan was for reunification of Takwon with his mother. The respondent then told the worker that he was "signing his rights" to Takwon to his mother. The respondent requested a visit with his son and the worker scheduled a visit for January 28, 1999.
Immediately prior to this visit, there was a meeting with DCF that the respondent attended. At that meeting, the DCF social worker explained to the respondent the department's expectations that the respondent had to satisfy before he could have custody of Takwon. Those expectations included anger management counseling and parenting classes.
At the January 28, 1999 visit, the respondent interacted minimally with Takwon. Instead, he conversed with Takwon's mother who also was present for the visit. There was little play between the respondent and his son and few signs of affection.
The respondent requested and was granted a second visit with Takwon on February 11, 1999. The respondent was on the telephone for much of this visit and again failed to significantly interact with his son.
After this visit, the DCF social worker again advised the respondent to follow through on the specific steps. The respondent indicated that he was not interested in doing so.
Thereafter, the respondent failed to advise DCF as to his whereabouts. In an effort to locate him, a DCF social worker contacted his probation officer and his mother. Neither knew the respondent's whereabouts. The worker did not contact the Department of Motor Vehicles because the respondent had informed her that he suffered from epileptic-type grand mal seizures. The worker, therefore, had reason to believe that the respondent did not possess a motor vehicle operator's license.
In April 2000, DCF learned that the respondent was incarcerated in Georgia where he had been convicted of kidnapping and robbery. His maximum release date is in 2009. A DCF social worker spoke with an official in the institution in which the respondent is incarcerated and advised him to tell the respondent how to contact DCF. Neither DCF nor Takwon thereafter heard from the respondent.
Takwon is now four years old. He is developmentally delayed in his CT Page 14497 speech. He has also had problems with socialization. In the past, he has suffered anxiety attacks when meeting new people. falling to the floor and cowering when an adult entered the room. Recently, he has made progress both with his speech and socialization.
Takwon has been in the same foster home for three years. The uncontradicted evidence is that his foster parents are his psychological parents.[1] Unfortunately, his foster parents do not wish to adopt him. Takwon is adoptable and DCF plans to place Takwon with an adoptive family.
On July 19, 2000, DCF filed this petition to terminate the respondent's parental rights based on his abandonment of his son. On that date, the court (Santos, J.) found that further efforts to reunite the respondent and his son were not appropriate. On March 13, 2001, DCF moved for permission to amend its petition to further allege the ground of no ongoing parent-child relationship. On April 6, 2001, that motion was granted by the court.
"Termination of parental rights means the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and the child's parent or parents. . . . Termination of parental rights is a most serious and sensitive judicial action. . . . Since termination of parental rights is the ultimate interference by the state with the natural rights of parents in their children, resulting in everlasting severance of the legal relationship, and usually the permanent separation of parent and child as well, courts must require strict adherence to the statutory standards." (Citations omitted; internal quotation marks omitted.) In re Steven N.,57 Conn. App. 629, 632, 749 A.2d 678 (2000)
In a proceeding to terminate parental rights without a parent's consent, brought pursuant to General Statutes § 17a-112, statutory standards require that DCF prove three elements by clear and convincing evidence that: (1) DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds . . . that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing pursuant to subsection (b) of section 17a-110 or section 17a-111b that such efforts are not appropriate," (2) one or more statutory grounds for termination exist, and (3) termination of parental rights is in the best interests of the child. General Statutes (Rev. to 1999) § 17a-112 (c), now General Statutes (Rev. to 2000) § 17a-112
(j); In re Samantha B., 51 Conn. App. 376, 377, 721 A.2d 1255 (1998), cert. denied, 248 Conn. 902, 732 A.2d 177 (1999); In re Michael R.,49 Conn. App. 510, 512, 714 A.2d 1279, cert. denied, 247 Conn. 919, CT Page 14498722 A.2d 807 (1998)
"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child. . . . It is thus possible for a court to find that a statutory ground for termination of parental rights exists but that it is not in the best interests of the child to terminate the parental relationship, although removal from the custody of the parent may be justified." (Citations omitted; internal quotation marks omitted.) Inre Ashley E., 62 Conn. App. 307, 311-12, 771 A.2d 160, cert. denied,256 Conn. 910, 772 A.2d 601 (2001).
 I
"It is axiomatic that in seeking to terminate parental rights, the commissioner must prove by clear and convincing evidence that the department made reasonable efforts to reunify the parent and child as required by [General Statutes] § 17a-112(c)(1) [now §17a-12(j)(1)]. . . . The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof . . . [R]easonable efforts means doing everything reasonable, not everything possible." (Citations omitted; internal quotation marks omitted.) In reDaniel C., 63 Conn. App. 339, 360-61, 776 A.2d 487 (2001). However, the statute also provides that a court need not make a finding of reasonable efforts where the court has determined at a hearing that such efforts are not appropriate.
A DCF social worker contacted the respondent when he was incarcerated in Connecticut and informed him how he could contact the department. When the respondent was released from prison and finally contacted DCF, the department scheduled two visits between the respondent and his son. When the respondent's whereabouts became unknown, DCF contacted his mother and his probation officer in an effort to locate him. When it was learned that the respondent was incarcerated in Georgia, DCF contacted the incarcerating institution in an effort to advise the respondent on how to contact the department.
The respondent has not suggested what more DCF could reasonably have done since, for all but a few weeks of the duration of this case, he was either in prison or whereabouts unknown. The respondent has not presented CT Page 14499 evidence that DCF could have provided him with services other than case management, foster care and visitation while he was in prison; see In reHector L., 53 Conn. App. 359, 371-72, 730 A.2d 359 (1999); and the respondent never expressed an interest in having his son visit him in prison. The evidence is that the respondent could have obtained much of the counseling the court required of him while he was in prison. Seeid., 372 ("the respondent knew what rehabilitation programs were available through the department of correction and, as noted earlier, he failed to take any of the substance abuse and parenting programs offered. Although the respondent could not avail himself of the programs normally available through the department because of the restraints imposed by his incarceration, he is not excused from making use of available programs offered by the department of correction.").
Once the respondent was released from prison he was promptly afforded two visits with his son and urged to follow through on the specific steps. He manifested disinterest in both.
These events transpired prior to the filing of this petition. By the time the petition was filed, the respondent already had been incarcerated in Georgia and was facing many years of incarceration. Accordingly, the court found that continuing efforts at reunification were not appropriate.
"[R]easonableness is an objective standard . . . and whether reasonable efforts have been proven depends on the careful consideration of the circumstances of each individual case." (Internal quotation marks omitted.) In re Hector L., supra, 53 Conn. App. 372. By clear and convincing evidence, the court finds that DCF used reasonable efforts to reunite the respondent and his son prior to the filing of the petition but that the respondent was unable or unwilling to benefit from such efforts. The finding of the court at the time of the petition's filing that no further efforts at reunification were appropriate obviates the need for any further finding with respect to reasonable efforts.
 II
The first ground of the petition is that the respondent has abandoned his son. "Abandonment focuses on the parent's conduct . . . A lack of interest in the child is not the sole criterion in determining abandonment. . . . General Statutes 17a-112(b)(1). defines abandonment as the fail[ure] to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. . . . Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Abandonment occurs where a parent fails CT Page 14500 to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . .
"Section 17a-112(b)(1) does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. A parent must maintain a reasonable degree of interest in the welfare of his or her child. Maintain implies a continuing, reasonable degree of concern. . . .
"The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." (Internal quotation marks omitted.) In re Deana E., 61 Conn. App. 185,193, 763 A.2d 37 (2000).
Other than the respondent's requesting custody of Takwon in a phone call with DCF and attending two visits with his son in 1999, the evidence of abandonment is overwhelming. Concededly, as the respondent observed in summation, Takwon has been a toddler throughout most of this case. However, he is now four years old. There is no evidence that the respondent has ever expressed affection for him. He failed to request visits or otherwise contact DCF when he was in prison in Connecticut and in Georgia. He has never provided support for his son, nor has he ever sent him anything. "Our case law has noted that a parent's incarceration does not absolve him of the requirement that he maintain contact with his child. Although a parent's imprisonment alone does not constitute abandonment . . . [t]he restrictions on movement that are inherent to incarceration . . . do not excuse a failure to make use of available, albeit limited, resources for communication with [his child]. . . . A parent's interest in his child must not merely be sporadic in nature, but must exist on a consistent and continuing basis." (Citations omitted; internal quotations omitted.) In re Shane P., se Conn. App. 244, 256,754 A.2d 169 (2000).
By clear and convincing evidence, the court finds that the respondent has abandoned his son.
 III
In the amendment to its petition, DCF claims that there is no ongoing parent-child relationship between the respondent and Takwon. "General Statutes (Rev. to 1999) § 17a-112(c)(3)(D), now (j)(3)(D), provides CT Page 14501 that the court may grant a petition to terminate parental rights if it finds by clear and convincing evidence that there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. . . .'
"This part of the statute requires the trial court to undertake a two-pronged analysis. First, there must be a determination that no parent-child relationship exists, and second, the court must look into the future and determine whether it would be detrimental to the child's best interest to allow time for such a relationship to develop. . . . In considering whether an ongoing parent-child relationship exists, the feelings of the child are of paramount importance. . . . The ultimate question is whether the child has no present memories or feelings for the natural parent. Feelings for the natural parent connotes feelings of a positive nature only." (Citations omitted; internal quotation marks omitted.) In re Jonathan G., 63 Conn. App. 516, 525, 777 A.2d 695
(2001).
In In re Valerie D., 223 Conn. 492, 613 A.2d 748 (1992), our Supreme Court circumscribed the conditions under which parental rights could be terminated based on "no ongoing parent-child relationship." In In reValerie D., a child was taken from the mother and placed in foster care within a week of the child's birth. Approximately three and one-half months after the child's birth, DCYS (now DCF) filed a coterminous petition to terminate the mother's parental rights based, inter alia, on the lack of an ongoing parent-child relationship. For over two weeks prior to the filing of the petition, the mother was denied any visitation with her baby until she could produce a note from her physician stating that she was free of communicable diseases. Id., 528. The petitioner's expert testified that there was no parent-child relationship.
The Supreme Court observed that while General Statutes § 46b-129
authorized an order of temporary custody based on a reasonable cause standard of proof, grounds for termination of parental rights must be established by clear and convincing evidence. Under the facts of the case, however, "once the child had been placed in foster care pursuant to the determinations made under § 46b-129, a finding of lack of an ongoing parent-child relationship three and one-half months later was inevitable" under the termination of parental rights statute. Id., 533. The court held that it would not "be consistent to read the two statutes together so as to contemplate such a scenario." Id., 534. Thus, the court concluded, General Statutes § 46b-129 and the termination of parental CT Page 14502 rights statute "cannot be read together so as to permit the custody determinations made under the first statute to lead directly to the termination determination under the second statute." Id., 535.
The Appellate Court has recently distinguished In re Valerie D. where a custodial parent "lapsed into drug use and disappeared for a number of months." In re Shane P., 58 Conn. App. 234, 241, 753 A.2d 409 (2000). In such a circumstance, the court held, it was the parent's conduct rather than the child's being in foster care that resulted in the absence of a parent-child relationship. Id., 241-42.
This case is analogous to In re Shane P. Unlike the situation in In reValerie D., Takwon was not taken into custody by DCF until he was nearly one year old. During that year the respondent could have created a parent-child relationship with his son and, had he not committed acts resulting in his incarceration, maintained that relationship. Here, as inIn re Shane P., it was the respondent's conduct rather than the child being in foster care that resulted in the absence of a parent-child relationship. The respondent absented himself from Takwon's life and committed the acts that resulted in his incarceration. In re Valerie D. is inapposite.
The court turns to the criteria for an ongoing parent-child relationship. Takwon does not know his father. He does not respond to him and does not identify him as a parent. Rather, he refers to his foster father as his father. With only two brief encounters with the respondent, it is clear that Takwon has no memory or feelings for him. This is unremarkable especially since, in his two visits with his son, the respondent failed to significantly interact with him. By clear and convincing evidence the court finds that no ongoing parent-child relationship, as defined by the statute exists. See In re Shane P.,
supra, 58 Conn. App. 240-41; In re Savanna M., 55 Conn. App. 807,815-16, 740 A.2d 484 (1999).
The respondent is not scheduled for release from prison until 2009. He continues to show no interest in his son apart from this litigation. He still has not spoken with him, has never sent him anything, and does not acknowledge his birthday. Takwon has special needs in addition to the usual needs of a four year old boy. Those usual needs include a stable nurturing home. "The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of its environment." (Internal quotation marks omitted.) Inre Shyina B., 58 Conn. App. 159, 167, 752 A.2d 1139 (2000). The respondent cannot provide for those needs and has manifested no interest in doing so. By clear and convincing evidence, the court finds that it would be detrimental to Takwon's best interests to allow time for a CT Page 14503 parentchild relationship with the respondent to develop.
 IV. A. Mandatory Findings
"In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the parents' parental rights is not in the best interests of the child." (Internal quotation marks omitted.) In re Ashley E., supra, 62 Conn. App. 315. "In arriving at that decision, the court is mandated to consider and make written findings regarding seven factors delineated in General Statutes [(Rev. to 1999) § 17a-112 (d) [now § 17a-112 (k)]." (Footnote omitted; internal quotation marks omitted.) In re Deana E.,61 Conn. App. 185, 190, 763 A.2d 37 (2000)
1. Finding regarding the timeliness, nature and extent of servicesoffered, provided, and made available to the parent and the child by achild-placing agency to facilitate the reunion of the child with theparent.
Because the respondent has either been in prison or disinterested in availing himself of services, no such services were offered.
2. Finding regarding whether DCF has made reasonable efforts to reunitethe family pursuant to the Federal Child Welfare Act of 1980, asamended.
DCF made reasonable efforts to reunite the family, but the respondent was unable, when he was in prison, and unwilling, when he was not, to benefit from such efforts. This the court finds by clear and convincing evidence.
3. Finding regarding the terms of any applicable court order entered into and agreed upon by any individual or child-placing agency and the parent, and the extent to which all parties have fulfilled theirobligations under such order.
On May 17, 1998, the court issued specific steps that the respondent was to take to facilitate the return of Takwon to him. Those steps included the following: keep your whereabouts known to DCF and your attorney; visit the child as often as DCF permits; participate in parenting and individual counseling; submit to substance abuse assessment CT Page 14504 and follow recommendations regarding treatment; successfully complete substance abuse treatment and follow recommendations regarding after care treatment including relapse prevention; sign releases authorizing DCF to communicate with service providers; secure and maintain adequate housing and legal income; abstain from substance abuse; have no further involvement with the criminal justice system. The respondent took none of the steps required of him. In fact, he violated his probation and was convicted of serious felonies in Georgia. Subsequent to the filing of the petition the respondent was incarcerated in Georgia and no court order was issued.
4. Finding regarding the feelings and emotional ties of the child withrespect to the child's parents, any guardian of the child's person andany person who has exercised physical care, custody or control of thechild for at least one year and with whom the child has developedsignificant emotional ties.
Takwon has no feelings or emotional ties to the respondent. His foster parents, whom he identifies as his mother and father, are his psychological parents.
5. Finding regarding the age of the child.
Takwon's age is now four years.
6, Finding regarding the efforts the parent has made to adjust suchparent's circumstances, conduct or conditions to make it in the bestinterest of the child to return the child to the parent's home in theforeseeable future, including, but not limited to: (A) the extent towhich the parent has maintained contact with the child as part of aneffort to reunite the child with the parent; provided the court may giveweight to incidental visitations, communications or contributions, and(B) the maintenance of regular contact or communication with the guardianor other custodian of he child.
The respondent has made no effort whatsoever to adjust his circumstances, conduct or conditions to make it in the best interest of Takwon to return to the respondent in the foreseeable future. Since Takwon came into DCF custody, the respondent has had no contact with him except for two visits in early 1999. Thereafter the respondent's whereabouts became unknown and he was arrested and convicted in Georgia of kidnapping and robbery for which he will be incarcerated until 2009.
7. Finding regarding the extent to which a parent has been preventedfrom maintaining a meaningful relationship with the child by theunreasonable act or conduct of the other parent of the child, or theCT Page 14505unreasonable act of any other person or by the economic circumstances ofthe parent.
The respondent has not been prevented from maintaining a meaningful relationship with Takwon by the unreasonable act or conduct of Takwon's mother, or the unreasonable act of any other person or by his own economic circumstances.
 B.
Although in determining whether to grant a petition to terminate parental rights the court is statutorily mandated to consider seven factors; General Statutes (Rev. 1999) § 17a-112(k), now §17a-112(k); In re Tyscheicka H., 61 Conn. App. 19, 26, 762 A.2d 916
(2000); "[t]he trial court is vested with broad discretion in determining what is in the child's best interests. Conducting a best interest analysis is . . . purposefully broad to enable the trial court to exercise its discretion based upon a host of considerations." (Citations omitted; internal quotation marks omitted.) In re Alissa N., 56 Conn. App. 203,208, 742 A.2d 415 (1999), cert. denied, 252 Conn. 932, 746 A.2d 791
(2000). "The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of its environment." (Internal quotation marks omitted.) In re ShyinaB., supra, 58 Conn. App. 167.
Takwon's best hope for sustained growth, development, wellbeing, continuity and stability of its environment is to be adopted. This is DCF's plan. There is no reason to delay such an adoption here and risk "[t]he well-known deleterious effects of prolonged temporary placement on the child. . . ." In re Juvenile Appeal (83-CD), 189 Conn. 276, 292,455 A.2d 1313 (1983). Takwon, though a special needs child, is adoptable. Even if he were to face long-term foster care, contact with the respondent would not be in his interests. The respondent has shown that he has little more than indifference and antisocial behavior to offer. By clear and convincing evidence, the court finds that it is in Takwon's best interests that the petition be granted.
 V
Prior to the trial of this petition, the court ruled that it would consider the petition together with the respondent's "motion to modify disposition to revoke commitment and transfer of guardianship to maternal grandmother." Had the court denied the petition, it would have ruled on the merits of the motion to revoke the commitment.[2] However, that aspect of the motion now is moot. CT Page 14506
The court does consider the motion insofar as it seeks to transfer guardianship of Takwon to the maternal grandmother. Although the matter is not free from doubt, the court holds that it does have jurisdiction to appoint such a guardian after terminating the parental rights of both parents. See General Statutes (Rev. 1999) § 17a-112(h), now §17a-112(o); In re Antony B., 54 Conn. App. 463, 476-79, 735 A.2d 893
(1999).
The court finds the following additional facts. On May 12, 1998, just before seeking an ex parte order granting it temporary custody of Takwon, a DCF social worker received a telephone call from the respondent's mother Gwendolyn S. Ms. S. identified herself, expressed concern about her grandson and indicated she could be considered a possible placement f or Takwon. The respondent subsequently made the same request of DCF. On May 20, 1998, a DCF social worker went to Ms. S.'s house to speak with her. In August, 1998, another social worker was assigned the case. Neither this new worker nor a subsequent worker attempted to determine whether Ms. S. would be an appropriate placement nor did they contact Ms. S. to determine whether she was interested in visiting Takwon. Neither did Ms. S., however, contact DCF to request visitation or again express an interest in having Takwon live with her until she spoke with another social worker in November 2000.[3] At that time, the social worker told Ms. S. about Takwon's special needs and asked how she would care for those needs. Ms. S. was nonresponsive. The social worker did not refer Ms. S. to any services to learn about Takwon's needs and how to care for them.
During the two days that this case was on trial, the respondent's attorney attempted to obtain the attendance and testimony of the respondent's mother. She failed to appear.[4]
In a proceeding to transfer guardianship, the dispositive factor is what is in the best interests of the child. In re Jessica M.,217 Conn. 459, 475, 586 A.2d 597 (1991); Bristol v. Brundage,24 Conn. App. 402, 405, 589 A.2d 1 (1991); Garrett's Appeal fromProbate, 44 Conn. Sup. 169, 182, 677 A.2d 1000 (1994), aff'd and adopted, 237 Conn. 233, 676 A.2d 394 (1996).
The respondent has not proven that his mother would be an appropriate placement for his son. To the contrary, as of the time of trial, the respondent's mother had not recently manifested a present interest in being such a resource. See In re Chabelle S., Superior Court, Juvenile Matters at Hartford (Dec. 4, 2001) (best interests is determined as of the last day of trial). The court finds that it would not be in Takwon's best interest to transfer guardianship to his paternal grandmother. The motion is denied. CT Page 14507
 VI
The petition having been granted, the court terminates the respondent's parental rights. The Commissioner of the Department of Children and Families is appointed statutory parent for Takwon for the purpose of securing a permanent adoptive family. The commissioner shall file with this court no later than 30 days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law. The assistant attorney general with responsibility for this case shall ensure that the case is properly scheduled in the regional court for its first review Dated at Middletown this 11th day of October, 2001.