IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 19, 2007 Session

**NANCY ANN MCCRACKEN SIZEMORE v. STEVEN DOUGLAS
SIZEMORE**

**Appeal from the Chancery Court for Washington County**
**No. 35204      G. Richard Johnson, Chancellor**

_____

**No. E2005-01166-COA-R3-CV  - FILED JULY 30, 2007**

_____


AND

**NANCY ANN MCCRACKEN SIZEMORE v. STEVEN DOUGLAS
SIZEMORE**

**Appeal from the Circuit Court for Washington County**
**No. 21861      Thomas J. Seeley, Jr., Judge**

_____

**No. E2006-01456-COA-R3-CV**

_____


Nancy Ann McCracken Sizemore ("Wife") initially sued her spouse, Steven Douglas Sizemore ("Husband"), for divorce in the Washington County Circuit Court. She subsequently filed a notice of voluntary dismissal in that case. On the day the notice of nonsuit was filed in Circuit Court, Wife filed a divorce complaint in the Chancery Court for Washington County. The parties proceeded to trial in that court. The Chancery Court granted Wife a divorce, divided the parties' marital property, and ordered Husband to pay Wife child support and alimony. Following the entry of the Chancery Court's judgment, Husband filed a counterclaim in the Circuit Court proceeding – the one that had been dormant since Wife filed her notice of voluntary nonsuit some two years earlier. He argues that the case in Circuit Court was still pending because that court had not entered an order dismissing Wife's complaint. The Circuit Court dismissed Husband's counterclaim, stating (1) that Husband had waived his right to have the parties' divorce case tried in Circuit Court by fully participating in the trial in Chancery Court; and (2) that Wife's notice of nonsuit had "effectively dismissed the case" in Circuit Court. On appeal from the Chancery Court case, Husband contends that (1) the Chancery Court "never had jurisdiction" because the complaint in Circuit Court was pending when the

Chancery Court purported to assume jurisdiction; (2) the Chancery Court erred in not allowing him to obtain a transcript of the divorce hearing; (3) the Chancellor was biased against him and should have recused himself; (4) the Chancery Court erred in ordering him to pay child support for the parties' disabled adult son; (5) the Chancery Court erred in its division of the parties' marital property; (6) the Chancery Court erred in awarding Wife alimony; (7) the Chancery Court erred in imputing $100,000 per year of income to Husband; and (8) the Chancery Court erred in finding him in contempt. On appeal from the Circuit Court, Husband argues that the court lacked authority to dismiss his counterclaim. We affirm the judgments of both courts.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Edward Kershaw, Greeneville, Tennessee, for the appellant, Steven Douglas Sizemore.

Judith Fain, Johnson City, Tennessee, for the appellee, Nancy Ann McCracken Sizemore.

**OPINION**

I.

The parties were married in July 1978. Wife was then 19 and Husband was 23. Two children were born to the marriage. The oldest child was 23 at the time of the bench trial in Chancery Court. The youngest child, Ryan, was then 21. Ryan, who was born on September 21, 1983, is severely autistic. He is, for the most part, nonverbal, unable to feed himself, and unable to read or write. He must be supervised at all times.

Husband is from a wealthy family. He has had financial success in numerous business ventures. He also has a history of illegal drug use as well as drug trafficking. Wife has a degree in elementary education. She obtained her teaching certificate and taught for approximately three years. She stopped teaching to care for the parties' children. Eventually, she began working part-time with Husband and his father in their various business ventures.

In June 2002, Wife filed a complaint for divorce in the Washington County Circuit Court. On July 23, 2003, she filed, and served on Husband, a notice of voluntary dismissal. On the same day, Wife filed a divorce complaint in the Chancery Court for Washington County. The complaint

in Chancery Court alleges the fault ground of inappropriate marital conduct. The complaint specifically requests that the Court require Husband to pay alimony as well as support for Ryan.

Husband filed an answer and counterclaim in Chancery Court. He denied that he had been guilty of inappropriate marital conduct. In response to Wife's request that he be ordered to provide support for Ryan, Husband's answer states that

> he has been providing support for the parties' adult disabled child, Ryan, since the parties' separation, and throughout Ryan's lifetime, and that he will continue to provide support for Ryan, as needed. It is averred, however, that Ryan receives Three Hundred Forty Dollars ($340.00) per month in SSI due to his disability, in addition to receiving TennCare free of charge which provides Ryan with medical and dental insurance. Further, all of Ryan's out-of-pocket pharmaceutical, medical and dental expenses are provided to him free of charge as well.

The Chancery Court conducted a bench trial over the period October 11-13, 2004. The record does not include a transcript of this three-day proceeding. The Chancery Court entered a judgment of divorce on January 4, 2005. The court found, as stipulated by Husband, that Wife was entitled to a divorce. The judgment sets forth the following pertinent factual findings:

> [Wife]'s credibility was good. Generally, [Husband]'s credibility was poor. [Husband] evaded answers. He strayed from the questions that were asked in this Courtroom. [Husband] evaded answers. He came into this Court under the influence of drugs. When asked if he would take a drug test he said "yes" but when asked by the Court if he would fail the drug test he said "yes." [Husband] does get straight A's on credibility when it comes to his admission of fault in the divorce and in his admission of being a drug addict and an alcoholic.
>
> [Husband] is a drug addict and an alcoholic. [Husband] has an ego larger than the cosmos. We normally think of celebrities and actors and actresses of having egos. This man's ego is bigger. He has shown by the evidence that he is selfish, that his is greedy, that he is self-centered and one of the most narcissistic people this Court has ever seen examined on the stand. Let me tell you, so far as [Husband] is concerned life is about [him] and [him] alone. Everybody else can just care for themselves. This guy is out for this guy. Period. [Husband] is a spoiled-rotten adult. He is one of the most irresponsible people the Court has ever encountered. He bums his drugs from other people; he bums from his daddy. His daddy supports him. Indeed, if [Husband] needs money, his daddy provides

-3-

it. His Daddy will cover for him. The testimony of [Husband]'s former employee was that because of [Husband], cash is missing, revenue is missing, deposit books are missing and despite [Husband]'s allegations that [] his son was stealing money from the businesses, the Court concludes that regardless of whether or not the [parties'] son is stealing, [Husband] is robbing his father's businesses.

[Husband]'s drug of choice is cocaine. He says that now he can get about three and a half grams of cocaine for approximately $180.00. He says that will last him anywhere between one night and seven nights. In addition, [Husband] admits to excessive cocaine intake during the course of this divorce.

[Wife] readily admitted during her oath examination that she was an enabler for [Husband], and it's also this Court's conclusion that [Husband]'s parents, and particularly his father, are also enablers; that these people permitted [Husband] to continue his cocaine and alcohol addiction in spite of everything.

Yet in spite of his substance abuse, [Husband] is an intelligent and talented man. He is a[n] entrepreneur of the first degree. He is a licensed general contractor who has built and developed and bought and sold buildings, commercial primarily, some residential. He has had a Mastercraft boat business. He's [] been involved in the management of real properties. He has a retail internet plumbing sales business selling plumbing fixtures of a very high quality and cost[]. In addition, he has been involved in various other businesses. He is full of ideas about business, including lingerie, which he never got off the ground, but had some ideas about that. He had a t-shirt, sweatshirt, cap business called "Ho Wear" that evidently was not viable in the sense o[f] profitability.

Although [Husband] testified that he was short of cash in recent times in regard to his house payment, for many years, he supported [Wife] and his sons and himself in a lavish lifestyle. Trips to New York. Trips to Atlanta to shop. Trips to Chicago. Trips to China or Hong Kong. Trips here, trips there, spending money like it was no problem.

This man swore under oath that his earning capacity was $100,000.00 a year. The Court agrees. He is capable of making $100,000.00 a year. He isn't making it right now because he's a drug addict, but he is not without funds. [Husband] has spent money not only on alcohol, drugs, girlfriends, girlfriends' gifts, girlfriends' travel, but on

-4-

[prostitutes]. [Husband] is grossly under-employed because of his voluntarily assumed addictions to alcohol and cocaine and because he's been babied by his father.

However, pursuant to the parties' [partial] mediated agreement, [Husband] now has all of both parties' interests in their various business ventures including the management of some of [Husband]'s father's business ventures. Therefore[, Husband] has all of the income from business activities that both parties used to share.

In addition, during the parties' marriage, it was [Husband] who originally came up with [a] scheme not to pay federal income taxes and it was [Husband] who controlled what debts would be paid because he directed [Wife]'s payment or nonpayment of debts owed by the parties so [Husband] is primarily responsible for the fact that the parties' income taxes have not been paid.

[Wife] has the sole responsibility for the care of the parties' adult disabled son. Because the State of Tennessee has decided that there must be two (2) workers present when the State sends someone to help with Ryan's care and there are not at this time two (2) workers who have been trained and who have the same available times to work, [Wife] is without help with Ryan. [Wife] does not have consistent help with Ryan and the State workers do not know when there will be two (2) people available. The lack of consistent help means that [Wife] must be available to care for Ryan at any time. The likelihood of [Wife] finding work that would allow her such flexibility, that is, the ability to leave work at any time and to stay away from work without notice for undefined periods of time is unlikely. Given [Husband]'s resources, his ability and his businesses and given the fact that [Wife] must be available to care [for] the parties' son at all times and that she does not have employment, that [Wife] will be receiving minimal periodic support from [Husband] at this time, [Husband] is in a far better position to pay the parties' federal tax obligations and [Wife] will need to have those obligations paid as a form of support for herself and so that she can care for the parties' son.

The court found that Husband had transferred his interest in the parties' marital residence to Wife as a gift and that, therefore, she was entitled to the proceeds from the sale of the residence – approximately $240,000 – as her separate property. The court ordered the Clerk and Master to first use these proceeds to pay Wife's attorney's fees. The court also awarded Wife a vehicle valued at approximately $38,000.

-5-

Husband was awarded two vehicles with a total value of approximately $21,000 and a tract of real property valued at $30,000. The court ordered Husband (1) to pay all federal tax obligations incurred by the parties, jointly or individually, during their marriage; (2) to pay Wife $1,254 per month in child support for Ryan; (3) to pay Wife $500 per month as alimony *in futuro*; (4) to pay Wife $1,980 "to reimburse her for her discretionary costs for court reporter expenses incurred during this divorce"; (5) to obtain a life insurance policy for at least $250,000 and name his disabled son Ryan as the beneficiary in trust; and (6) to be responsible for (a) all debts related to the businesses owned and operated by the parties and (b) any and all money owed to Husband's father.

On a number of occasions thereafter, the Chancery Court found Husband in contempt for failing to make the support and tax payments as ordered. The court, acting sua sponte, later increased Husband's monthly child support obligation for Ryan to $1,316 "because [Husband] ha[d] chosen not to spend time with [Ryan]."

On May 17, 2005, Husband filed (1) a motion to recuse and strike all judgments and orders in the case because, according to Husband, there were questions regarding the Chancellor's impartiality; and (2) a motion to dismiss Wife's divorce complaint in Chancery Court for lack of subject matter jurisdiction. Husband asserted that the Chancery Court did not have jurisdiction because the Circuit Court, *i.e.*, the court in which Wife had originally filed her divorce complaint, had not entered an order of dismissal following the filing of Wife's notice of voluntary nonsuit. The Chancery Court denied both motions.

Husband also filed a motion seeking permission to purchase a transcript of the three-day divorce hearing held in Chancery Court. Husband did not share in the payment of the court reporter's per diem for the trial. He argues that he is entitled to a copy of the transcript by virtue of the fact that, as ordered by the court, he must reimburse Wife for her court reporter expenses. The Chancery Court also denied this motion.

On the same day that he filed his motion to recuse and motion to dismiss for lack of subject matter jurisdiction, *i.e.*, May 17, 2005, Husband filed a counterclaim in the Circuit Court action in which Wife had filed a notice of nonsuit almost two years earlier. Wife filed a motion to dismiss the counterclaim, citing (1) that she had filed a notice of voluntary dismissal in the action; (2) that she had subsequently filed a divorce action in Chancery Court; and (3) that the parties had proceeded, without objection from Husband, to a judgment in Chancery Court.

After hearing the argument of counsel, the Circuit Court granted Wife's motion and dismissed Husband's counterclaim. The Circuit Court stated in its order that, contrary to Husband's argument, the Chancery Court had subject matter jurisdiction to hear Wife's divorce action and that it – *i.e.*, the Circuit Court – would "not re-try t[he] divorce action as [Husband] waived whatever right he had to have the case tried in [Circuit] Court by fully participating in the Chancery Court trial." The Circuit Court's order further provides that "[t]he non-suit taken by notice of nonsuit filed by [Wife] in this case on July 23, 2003 effectively dismissed the case."

Husband filed a notice of appeal in both the Chancery Court and Circuit Court.

II.

Husband's appeal from Chancery Court raises the following issues:

> 1. Whether the divorce complaint filed by Wife in Circuit Court was pending at the time that she filed the subsequent complaint in Chancery Court.

> 2. Whether the Chancery Court erred in refusing to allow Husband to purchase a transcript of the divorce proceeding.

> 3. Whether the Chancellor abused his discretion in refusing to recuse himself.

> 4. Whether the Chancery Court erred in ordering Husband to pay child support for the parties' adult disabled son.

> 5. Whether the Chancery Court erred in its division of the parties' marital property.

> 6. Whether the Chancery Court erred in awarding Wife alimony.

> 7. Whether the Chancery Court erred when it imputed to Husband an income of $100,000 a year.

> 8. Whether the Chancery Court erred in finding Husband in contempt for failing to pay the support and tax debts ordered by the court.

Husband's appeal from Circuit Court raises the issue of whether that court erred in dismissing his counterclaim.

III.

In this non-jury case, our standard of review is *de novo* upon the record of the proceedings below; however, the record comes to us with a presumption of correctness as to the trial court's factual determinations – one that we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); ***Wright v. City of Knoxville***, 898 S.W.2d 177, 181 (Tenn. 1995). Our review of questions of law is *de novo* with no presumption of correctness attaching to the trial court's conclusions of law. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996).

IV.

A.

The first issue raised by Husband is whether the complaint filed by Wife in Circuit Court was pending when she filed the complaint in Chancery Court. Husband asserts that the Circuit Court action was still pending at that time and that, therefore, the Chancery Court's subsequent judgments and orders should be vacated because that court "never had *jurisdiction* to hear this divorce." (Emphasis added). He argues that the Circuit Court's failure to enter an order of voluntary dismissal kept Wife's cause of action "alive" in that court and voided any action subsequently taken by the Chancery Court. We find this issue adverse to Husband.

The real issue in this case is not whether the Chancery Court had subject matter jurisdiction. It is axiomatic that a chancery court has such jurisdiction. *See* T.C.A. § 16-11-110 (1994); *see also* T.C.A. § 16-10-108 (1994). The real issue in this case pertains to the doctrine of "former suit pending." That doctrine provides that when two courts have concurrent jurisdiction over a particular subject, the court that first obtains jurisdiction retains it to the exclusion of the other. ***Young v. Kittrell***, 833 S.W.2d 505, 508 (Tenn. Ct. App. 1992).

We agree with the trial court's conclusion that Husband failed to *timely* raise this issue below. As stated by our Supreme Court, "[w]e are of the opinion that there is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all." ***In re Adoption of E.N.R.***, 42 S.W.3d 26, 32 (Tenn. 2001). "The jurisdiction of [the Court of Appeals] is appellate only and we consider those issues which are *timely* brought to the attention of the trial court." ***Mallicoat v. Poynter***, 722 S.W.2d 681, 682 (Tenn. Ct. App. 1986) (emphasis added). Wife filed the notice of voluntary dismissal in Circuit Court and the divorce complaint in Chancery Court on the same day in July 2003. The Chancery Court action proceeded to trial in October 2004. That court entered a judgment of divorce in January 2005. Husband waited until five months after[1] the Chancery Court entered its divorce judgment to first raise – via a motion to dismiss – the issue of whether the Chancery Court should have heard and decided this case. Husband did not timely raise the issue of "former suit pending" below. Hence, he cannot raise it on this appeal.

Since a further appeal in this case is possible, we have elected to address the substance of Husband's issue challenging the Chancery Court's decision to hear this divorce case.

Husband argues that the case of ***Evans v. Perkey***, 647 S.W.2d 636 (Tenn. Ct. App. 1982) supports his position that the complaint in Circuit Court was pending when he filed his counterclaim and, as a consequence, the Chancery Court had no jurisdiction. In ***Evans***, the issue was whether the one-year period within which a plaintiff can reinstitute suit under the saving statute, T.C.A. § 28-1-105, starts from the date a plaintiff gives notice of its voluntary dismissal or the date that the court

---

[1] The case was still pending in Chancery Court as a result of the filing of post-judgment motions.

enters an order dismissing the suit without prejudice. *Id.* at 638. The plaintiffs in *Evans* asserted that the following pronouncement in the case of *Rickets v. Sexton*, 533 S.W.2d 293 (Tenn. 1976), mandates a holding that the period in question begins to run when a *notice* of voluntary dismissal, rather than an *order* of voluntary dismissal, was filed:

> The rule specifies that a plaintiff "shall have the right to take a voluntary nonsuit or to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause". This portion of the rule is not dependent upon the determination of the trial judge. The lawyer for the plaintiff is the sole judge of the matter and the trial judge has no control over it. It is not necessary that he approve the action of plaintiff's counsel by singing any order; nor may he nullify the rules by an order "disallowing" the nonsuit. All that is required to dismiss prior to the trial, in the absence of the existence of any of the exceptions above noted, is the filing of a written notice of dismissal.
>
> In this case plaintiffs' counsel, "gilded the lily" by filing a pleading captioned "motion for voluntary dismissal" which was actually in the form of an order tendered for the signature of the Chancellor. It bore the signature of plaintiffs' then counsel of record. This hybrid document was filed one day before the trial date. We hold that it was substantial compliance with the rules and constituted a "written notice of dismissal."
>
> While plaintiff is master of his suit and may dismiss at his pleasure before trial, and without the concurrence of the trial judge, better practice would demand a pro forma order, filed after plaintiff's nonsuit, to the end that the dismissal may be reflected upon the minutes of the court.

*Evans*, 647 S.W.2d at 640 (quoting *Rickets*, 533 S.W.2d at 294). The *Evans* Court found that *Rickets* did not control, stating that

> [i]n *Rickets*[,] the court was concerned with the right of a party to take a voluntary nonsuit and the lack of the power of the court to deprive him of that right. We construe the *Rickets* court to be saying that the plaintiff in that case had done all that was required to be done when he gave written notice of his intention to take a nonsuit. It was not necessary for the court to grant permission or enter an order permitting it to be done. However, we do not find the court to be saying that a judgment or decree need not be entered for final adjudication of a case.

*Evans*, 647 S.W.2d at 640-41. The *Evans* Court held that "the one-year statute of limitations ran from the date of the entry of the order of the court and not from the date of filing the notice of nonsuit." *Id.* at 641. *See also* **Green v. Moore**, 101 S.W.3d 415, 420 (Tenn. 2003) (holding that the 30-day time period to file a notice of appeal began running on the date that the trial court entered an order confirming that all claims between the parties had been adjudicated).

The holdings in the *Evans* and *Green* cases do not control the disposition of the instant case. Those cases involve the issue of whether certain time limitations, not involved in the instant case, begin to run when the plaintiff files a notice of voluntary dismissal or when the court enters an order dismissing the action. The issue in this case is whether the Circuit Court action was pending, *i.e.*, viable, after Wife filed a notice of voluntary dismissal in that court. As *Rickets* points out, the "plaintiff is master of his suit and may dismiss at his pleasure before trial." 533 S.W.2d at 294. The case was over as far as the claim of Wife was concerned. *See id*. *Evans* and *Green* do not mandate a different result in the instant case.[2]

B.

We now address Husband's sole issue on his appeal with respect to the judgment of the Circuit Court. He challenges whether that court "had authority to dismiss [Husband]'s counterclaim for divorce." Husband's argument on this issue is dependent on a finding that the Circuit Court case was pending when Wife filed her complaint in Chancery Court. Given our finding to the contrary, we conclude that the Circuit Court was correct in dismissing the counterclaim. Husband filed the counterclaim in question almost two years after Wife filed the notice of voluntary dismissal in the case. Under *Rickets*, that action was essentially over when Wife filed, and served Husband with, the notice of nonsuit. *See* 533 S.W.2d at 294. The only action left to be taken in the matter was the entering of an order that confirmed the nonsuit and dismissed the case. A court "has no jurisdiction over a counterclaim filed after the suit is voluntarily dismissed." **Salsman v. Texcor Indus., Inc.**, No. W2001-00730-COA-R9-CV, 2002 WL 1838135, at *4 (Tenn. Ct. App. W.S., filed July 29, 2002) (quoting 24 Am.Jur.2d *Dismissal* § 86 (1998)). The Circuit Court acted properly in dismissing Husband's counterclaim.

V.

Next, we turn to the Chancery Court's refusal to order that Husband be allowed to purchase a transcript of the divorce hearing. Husband argues that, even though he did not share in the payment of the court reporter's per diem at trial, he "should have had the right to have the court reporter transcribe the divorce proceeding after paying an additional fee." He relies upon the fact that he was ordered by the Chancery Court to reimburse Wife for the charges of her court reporter.

---

[2]The holdings in these two cases were followed by a 2003 amendment to Tenn. R. Civ. P. 41.01 explicitly stating that a notice of voluntary dismissal "must be followed by an order of voluntary dismissal signed by the court and entered by the clerk."

The rule which controls this issue is found in the case of ***Beef N' Bird of Am., Inc. v. Cont'l Cas. Co.***, 803 S.W.2d 234, 240 (Tenn. Ct. App. 1990):

> In civil cases, this Court notes judicially the practice of parties to engage and pay a stenographer a "per diem" to attend and record the evidence and proceedings. If only one party engages and pays the stenographer, it appears that the verbatim record of evidence and proceedings would be available to that party by contract. If more than one party jointly engage and pay the stenographer, it would appear that the verbatim record would be available to any one of the participating parties by contract. Inability of a participating party to pay for the transcription might make it unavailable to him.
>
> *A party who does not join in the engagement and payment of a stenographer has no contract right to require the stenographer to transcribe the record which is therefore unavailable to him unless and until made available to him on terms satisfactory to the stenographer and the party or parties who engaged the stenographer.*

(Emphasis added); *see also **In re Estate of Nichols***, No. 03A01-9103-CH-00102, 1992 WL 9436, at *1 (Tenn. Ct. App. E.S., filed January 24, 1992) (reversed on other grounds).

Wife engaged the services of the court reporter in question and paid the full per diem. Husband did not participate. Therefore, under ***Beef N' Bird of Am., Inc.***, Husband has no contractual right to require the court reporter to provide a verbatim transcript. *See* 803 S.W.2d at 240. The court's requirement that Husband – *i.e.*, the party that did not participate in the payment of the per diem – reimburse Wife the expenses she incurred in engaging the court reporter does not impact the non-availability of the transcript to Husband. It is still unavailable to him. Consequently, the Chancery Court did not err when it refused to order that Husband be allowed to purchase a copy of the transcript. As a non-party to the contract between Wife and the reporter, he had no such right.

VI.

Husband also contends that the Chancellor erred in refusing to recuse himself and to strike the judgments and orders entered by him in this case. As a basis for recusal, Husband cites several remarks the Chancellor made "which[, according to Husband,] would make any reasonable person question his impartiality." *See* Tenn. Sup. Ct. R. 10, Cannon 3(E)(1).

"[D]ecisions concerning whether recusal is warranted are addressed to the judge's discretion, which will not be reversed on appeal unless a clear abuse appears on the face of the record." ***Davis v. Liberty Mut. Ins. Co.***, 38 S.W.3d 560, 564 (Tenn. 2001) (citing ***State v. Hines***, 919 S.W.2d 573, 578 (Tenn. 1995)). Under the abuse of discretion standard, "[a] trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" ***Eldridge v. Eldridge***, 42 S.W.3d 82,

85 (Tenn. 2001) (quoting **State v. Shirley**, 6 S.W.3d 243, 247 (Tenn. 1999) (bracketing in **Eldridge**)).  It is well-settled that,

> [g]iven the adversarial nature of litigation, trial judges necessarily assess the credibility of those who testify before them, whether in person or by some other means.  Thus, *the mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse.*  If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartially issue for strategic advantage, which the courts frown upon.

**Davis**, 38 S.W.3d at 565 (emphasis added); *see* **Wilson v. Wilson**, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998) ("Bias or prejudice in the disqualifying sense must stem from an extrajudicial source and not from what the judge hears or sees during the trial.") (citations omitted).

Husband asserts that the following remarks – ones that were made by the Chancellor in his opinion from the bench[3] – were inappropriate and justified his recusal:

> The evidence was that because of [Husband]'s godfather, the late Congressman Jimmy Quillen, and because of [Husband]'s father having "lots of money" he was able to plea to [very] serious [Federal drug] charges.

> \* \* \*

> He is having problems running or managing any of the businesses and primarily what he's interested in is getting that hit of cocaine and that drink of vodka.

> [Wife] readily admitted during her oath examination that she was an enabler for [Husband], and it's also this Court's conclusion that [Husband]'s parents, and particularly his father, are also enablers; that these people permitted [Husband] to continue his cocaine and alcohol addiction in spite of everything.  Indeed, [Husband] needs money, his daddy provides it.  His Daddy will cover for him, and so [Husband], today, this Court concludes, is a drug addict and is an alcoholic. Furthermore, this Court finds that [Husband] has an ego larger than the cosmos.

---

[3] Though the record does not include a verbatim transcript of the divorce proceeding, it does include a transcript of the court's opinion from the bench.

* * *

He can not only bring about Godfather Jimmy Quillen and his daddy having lots of money and getting him out of trouble, but he has shown by the evidence that he is selfish, that he is greedy, that he is self-centered and one of the most narcissistic people this Court has ever seen examined on the stand.

Nothing in these statements establish a basis for the Chancellor's recusal. It is clear that these remarks were intended to express what the court found "ha[d been] shown by the evidence." The statements do not, as argued by Husband, show "a personal grudge against the Sizemore family," or indicate that the Chancellor had a personal bias or prejudice against Husband that stemmed from an extrajudicial source. *See Wilson*, 987 S.W.2d at 562. The Chancellor's remarks reflect that his comments and action were motivated by *evidence* damaging to Husband, not by the court's bias or prejudice against Husband. Accordingly, we find no abuse of discretion in the Chancellor's refusal to step aside.

VII.

Husband further argues that the Chancery Court erred in ordering him to pay child support for the parties' adult disabled son, Ryan. He asserts that the Chancery Court was without authority to make such an order because Ryan was over the age of 18 when Wife filed the divorce complaint in July 2003. Wife argues that the court had authority to order such support because Ryan was still in high school. *See* T.C.A. § 34-1-102(b) (2001).

As Husband points out, a court's authority to make an initial award of support for a disabled child is limited. The authority to make an initial award ceases to exist in the absence of the invocation of a court's jurisdiction before the child reaches the age of 18 or the provisions of T.C.A. § 34-1-102(b) are otherwise implicated. ***In re Conservatorship of Jones***, No. M2004-00173-COA-R3-CV, 2004 WL 2973752, at *13 (Tenn. Ct. App. W.S., filed December 22, 2004) ("[A] trial court has the authority to 'continue child support' for a severely disabled child only where an order awarding support was entered when the child was a minor, or as a modification of any other valid child support order.").

Wife asked the Court to order Husband to pay support for the parties' adult disabled child in her Chancery Court complaint. Husband's answer does not explicitly deny a *legal* obligation to support Ryan. In fact, the answer expresses a willingness to support the child. It says that Husband "has been providing support for the parties' adult disabled child" and "that he will continue to provide support for Ryan, as needed." This was the state of the pleadings on this issue when this case went to trial. As previously noted, we do not have a transcript or statement of the evidence of the three-day divorce hearing. Therefore, we do not know the extent of the evidence heard by the trial court on the subject of support for Ryan.

-13-

We actually know very little about Ryan. The parties agree that Ryan was 21 at the time of the divorce hearing in October 2004. In addition, we have a transcript of a post-trial hearing wherein the Chancellor stated that Ryan "was still in school" at the time of the October 2004 divorce hearing. This is basically the extent of our knowledge regarding Ryan.

T.C.A. § 34-1-102(b) provides as follows:

> Parents shall continue to be responsible for the support of each child for whom they are responsible after the child reaches eighteen (18) years of age if the child is in high school. The duty of support shall continue until the child graduates from high school or the class of which the child is a member when the child attains eighteen (18) years of age graduates, whichever occurs first.

As previously indicated, we know that, at all pertinent times in this case, Ryan was over the age of 18. We also know that Ryan was still in a pre-college level school in October 2004. What we do not know is if the "class of which [he] [was] a member when" he reached the age of 18 had graduated and, if so, when that class graduated. While, in the ordinary case, we could conclude that someone Ryan's age had been in a class that had long since graduated, we cannot logically reach such a conclusion given Ryan's severely disabled state. The sparse record before us does not support a holding that Husband was ordered to pay support for a child for whom he had no legal obligation to support under T.C.A. § 34-1-102(b).

## VIII.

Husband's arguments regarding the propriety of the Chancery Court's (1) division of the parties' marital property, (2) alimony award, and (3) decision to impute to him an annual income of $100,000, all raise factual issues which were addressed at the divorce hearing in October 2004. Because we have no transcript or statement of the evidence pertaining to that three-day hearing, we must presume the trial court's factual findings are correct. *See **Taylor v. Allstate Ins. Co.***, 158 S.W.3d 929, 931 (Tenn. Ct. App. 2004); ***Sherrod v. Wix***, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992). We cannot evaluate the sufficiency of evidence that is not before us. In considering this issue, we have examined the technical record, particularly the trial court's memorandum opinion announced at the conclusion of the proof in the divorce trial. Having done so, we cannot conclude that the court's findings of fact fail to support its decrees.

## IX.

Husband also argues that the Chancery Court erred in "repeatedly" holding him in contempt for failing to pay court-ordered support and tax debts. He asserts that the court should not have found him in contempt because the court "kn[e]w" he did not have the ability to pay the monies and only found him in contempt "to punish [him] due to [the Chancellor's] personal disdain for him." Husband specifically cites the Chancellor's finding that Husband is an alcoholic and drug addict to help support the assertion that the Chancellor "kn[e]w that . . . [Husband could not] possibly come

-14-

up with these amounts of money." This argument severely misses the mark. It assumes that there is evidence to support a finding that Husband did not have the ability to pay the monies ordered by the court. There is nothing in the sparse record before us to support such a finding. This issue is also found adverse to Husband.

X.

The judgment of the Chancery Court is affirmed. This case is remanded for the enforcement of that court's judgment and for the collection of costs assessed below, all pursuant to applicable law. The judgment of the Circuit Court is also affirmed. That case is remanded to the Circuit Court for the collection of costs assessed in that proceeding, pursuant to applicable law. Costs on appeal are taxed to the appellant, Steven Douglas Sizemore.

_____
CHARLES D. SUSANO, JR., JUDGE