IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 9, 2002 Session

## CHARLES GRADY WOODS v. ANGELIKA MAZUR WOODS

**Appeal from the Chancery Court for Sullivan County**
**No. 16-776(M)     John S. McLellan, III, Judge**

 **FILED MARCH 31, 2003** 

**No. E2001-02461-COA-R3-CV**

---

In this post-divorce case, Charles Grady Woods, acting *pro se*, appeals the Trial Court's orders finding him in contempt of court and awarding his former wife, Angelika Mazur Woods, certain sums which the Court found due and owing under the final decree of divorce. We affirm the judgment of the Trial Court.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Charles Grady Woods, Pro Se

John S. Taylor, Johnson City, for the Appellee, Angelika Mazur Woods

**OPINION**

On July 23, 1999, the Trial Court entered an order granting Ms. Woods a divorce on the stipulated ground of inappropriate marital conduct. The final decree of divorce provides as follows, in the part relevant to this appeal:

> . . .Father's child support obligation shall be $465.00 per month. Father currently receives approximately $1238.00 per month as his military retirement. Mother shall be, and hereby is, awarded [and] entitled to one-half (½) of this benefit ($619.00) and this Order shall operate to divest him and vest in her said one-half (½) of this retirement benefit, however denominated in the military documents. From the remaining one-half ($619.00), Father shall satisfy his aforesaid child support obligation of $465.00 through the legal expiration of said obligation, which is anticipated to be June, 2000

upon the graduation of the parties' daughter from high school. Through June of 2000, the balance of said one-half in monthly military retirement, or One Hundred Fifty-Four Dollars ($154.00), shall go to Mother as and for rehabilitative child support. From July, 2000 through and including June of 2003, all of Father's one-half of his retirement, or Six Hundred Nineteen Dollars ($619.00) per month, shall go to Mother as and for rehabilitative spousal support.

To summarize, from June of 1999 through June of 2003, inclusive, Mother shall receive all of Father's retirement through the military of $1238.00. One-half of this amount shall always be Mother's property settlement share of this benefit. The remaining one-half, or $619.00, shall, from July of 2000 through June 2003 inclusive, be rehabilitative spousal support; from June 1999 through June 2000, inclusive, $465.00 of the $619.00 balance shall be child support and the remainder, $154.00, shall be spousal support.

This document, to the extent permitted by the military retirement officials, shall operate to divest Father and vest in Mother the enumerated shares or portions hereinabove of Father's retirement benefit.

On June 23, 2000, Ms. Woods filed a motion for contempt and/or T.R.C.P. 60 relief, which alleges the following in relevant part:

[B]ecause of the unilateral acts of Father and/or the Department of Defense Regulations, the amount she is receiving is not $1,238.00, but $998.00. Thus, she is being shortchanged $240.00 every month. As of the date of this pleading, she has been shortchanged over $2,000.00 and this amount continues to grow.

      \*                 \*                 \*

Father, as an employee at the Northeast Correctional Facility in Mountain City, has other sources of income from which this obligation of $1,238.00 can be satisfied.

After a hearing held on August 20, 2001,[1] the Trial Court awarded Ms. Woods a judgment in the amount of $5,487.05 for sums it found to be due and owing under the divorce decree. The Trial Court found Mr. Woods in contempt for willfully refusing to pay Ms. Woods these sums. The Court's order stated that "[Mr. Woods] shall assure that he pays [Ms. Woods] $1,238.00 each and every month, regardless of the source of those funds, this obligation being personal to him."

Mr. Woods then filed a "motion to alter or amend judgment pursuant to T.R.C.P. 59.04 and motion for judicial modification pursuant to T.R.C.P. 60.02," which was denied by the Court.

---

[1] The delay of over a year in hearing the motion appears to be due to Mr. Woods' filing for bankruptcy.

On September 10, 2001, Ms. Woods filed another petition for contempt, alleging that Mr. Woods had discontinued making his alimony payments. The Court found this allegation to be true and granted her an additional judgment in the amount of $675.63.

On January 22, 2002, Mr. Woods filed a "motion for T.R.C.P. 60 relief" wherein he alleged that Ms. Woods had remarried and therefore his payments of rehabilitative alimony should cease. Ms. Woods' response admitted that she had remarried but denied that her alimony payments should be stopped as a result. On January 31, 2002, Ms. Woods filed a third petition for contempt. In a memorandum opinion filed March 20, 2002, the Court found in relevant part as follows:

> Plaintiff [Mr. Woods] now asserts that due to the Defendant's remarriage, that as a matter of law Plaintiff's rehabilitative alimony obligation should terminate. In fact, it appears Plaintiff unilaterally terminated paying rehabilitative alimony to Defendant making his last payment in August 2001, a time when Plaintiff learned that Defendant may be cohabitating with person to whom she apparently married in January 2002.
>
> \*　　　　\*　　　　\*
>
> Defendant testified that as a result of Plaintiff unilaterally terminating his rehabilitative alimony obligation that Defendant was not able to make her payments and got in arrears, resulting in Defendant deeding her residential property in lieu of foreclosure to the finance company and that she continues to be in need of support.
>
> The Court finds that Plaintiff has the burden of showing a substantial material change of circumstances which were unforeseeable at the time of [the] parties' Marital Dissolution Agreement which was subsequently approved by the Court. . .The Court finds that Plaintiff has failed to carry his burden of proof of showing a substantial and material change of circumstances and that by law, remarriage itself, standing alone, does not warrant termination of rehabilitative alimony as a "change of circumstance." The critical factor is the economic impact on the recipient former spouse of any financial contribution by the cohabitee/husband. The cohabitation or marriage itself is not the critical factor sufficient to trigger a review of an award of rehabilitative support. *Isbell v. Isbell*, 816 S.W.2d at 735. Therefore, the Court finds that Plaintiff has failed to establish a material change of circumstances since the entry of the Final Divorce Decree which would warrant termination of the rehabilitative support he agreed to pay.
>
> \*　　　　\*　　　　\*
>
> Defendant's Motion for Contempt upon Plaintiff's admission of not paying rehabilitative alimony is granted. The Court finds the Plaintiff in additional arrears in the sum of $3,337.52. Defendant is awarded

judgment for the additional arrearage of $3,337.52. This sum when combined with the sums previously awarded for arrearage would total $9,510.20 as of the end of February 2002.

In this appeal, Mr. Woods argues that the Trial Court misinterpreted its final decree of divorce and that he should be relieved of his obligations under that decree. Mr. Woods focuses exclusively upon the following sentence of the decree: "[t]his document, to the extent permitted by the military retirement officials, shall operate to divest Father and vest in Mother the enumerated shares or portions hereinabove of Father's retirement benefit." In support of this argument, Mr. Woods makes reference to certain military retirement regulations or guidelines, which are not contained in the record before us, which he alleges operate to limit the amount of his property settlement and alimony payments under the decree.

Although it is not entirely clear because the alleged regulations or guidelines were not introduced into evidence, it appears that Mr. Woods is arguing that their effect is to limit the amount to a certain percentage of a military retiree's retirement benefit which the federal goverment will disperse to a person other than the retiree himself. Even assuming *arguendo* that this is the case, Mr. Woods' argument is without merit because he confuses his obligation under the decree, *i.e.*, to pay Ms. Woods $619.00 per month as part of the property settlement, and $619.00 per month as rehabilitative alimony from July 2000 until July 2003, with a particular means to discharge that obligation, *i.e.*, through his retirement benefit check.

In other words, even if a federal regulation operates to limit to a certain percentage the amount of Mr. Woods' retirement benefit payable directly from the federal government to Ms. Woods, that regulation in no way limits Mr. Woods' obligation to his ex-wife to satisfy his responsibilities under the divorce decree, which is an agreement reached by virtue of settlement negotiations and mediation occurring at a time when Mr. Woods was represented by counsel. As the Trial Court noted, there is nothing to stop Mr. Woods from sending on to Ms. Woods the remainder of his retirement benefit in order to satisfy his obligations. The Trial Court made this ruling clear when it stated the following in its order of August 24, 2001: "Husband shall assure that he pays Wife $1,238.00 each and every month, regardless of the source of those funds, this obligation being personal to him." We find no error in the Court's judgment on this issue.

Mr. Woods next argues that the Court erred in finding that Ms. Woods' remarriage did not terminate his obligation to pay rehabilitative alimony. He also asserts that the remarriage results in the termination of his property settlement payments of one-half of his retirement benefit, in the amount of $619.00 per month. In support of this argument, he relies solely on a misstatement made by Ms. Woods' counsel during his opening argument at one of the hearings, wherein the attorney stated, "and then after June of 2003, until she dies or remarries, the sum of $619.00 as a property settlement."

The Court's final decree of divorce, however, is entirely clear: "one-half of this amount [the military retirement of $1,238 monthly] shall always be [Ms. Woods'] property settlement share of

this benefit." It is an elementary principle that "the court speaks through its order, not through the transcript." *See, e.g., In re Adoption of E.N.R.*, 42 S.W.3d 26 (Tenn. 2001). Based on our review of the record, we find no error in the Trial Court's ruling that Mr. Woods' obligation to pay rehabilitative alimony for the remaining six months (January through June of 2003) under the divorce decree was not discharged due to her remarriage.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of costs below. Costs of appeal are adjudged against the Appellant, Charles Grady Woods.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE