IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 4, 2019 Session

## WHEELER BONDING CO., INC. v. 1ST STOP BONDING LLC. ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 15-1142-IV      Russell T. Perkins, Chancellor**

———————————————————

**No. M2019-00064-COA-R3-CV**

———————————————————

Following a nonsuit by the original plaintiff, one of the original defendants was granted a default judgment with respect to his counterclaim. The original plaintiff thereafter moved to set the default judgment aside after the entry of final judgment, and later, attempted to re-file its previously nonsuited claims. After the trial court denied the motion to set aside and entered an order striking the original plaintiff's re-filed claims, this appeal followed. We reverse the denial of the motion to set aside and vacate the default judgment. The striking of the re-filed claims is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in part, Vacated in part, Affirmed in Part and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Mark Hammervold, Nashville, Tennessee, for the appellant, Wheeler Bonding Co., Inc..

Michael G. Hoskins, Nashville, Tennessee, for the appellees, 1st Stop Bonding, LLC and Wayne Parker.

## OPINION

## BACKGROUND AND PROCEDURAL HISTORY

This appeal concerns a business dispute involving Wayne Parker and two competing bonding companies, Wheeler Bonding Company, Inc. ("WBC") and 1st Stop Bonding, LLC ("1st Stop"). WBC, which has been duly licensed and registered in Tennessee since 1986, acts as a surety and provides bail bonds to those who have been charged with a criminal offense. Its principal location is in Nashville. 1st Stop, whose

principal location also is in Nashville, operates a similar business to WBC. Wayne Parker is a licensed bail bonding agent formerly affiliated with WBC.

The present litigation ensued on September 22, 2015 when WBC filed a sworn complaint against 1st Stop and Mr. Parker[1] in the Davidson County Chancery Court ("the trial court"). Therein, WBC alleged that its owner, Charles Wheeler, had begun to suspect that Mr. Parker was acting outside of the terms of his exclusive contract with WBC. Whereas Mr. Parker had historically been one of WBC's most productive agents, WBC's complaint alleged that Mr. Wheeler had noticed a "precipitous drop in Parker's productivity" beginning in June 2015. According to the complaint, an investigation into Mr. Parker's production decline revealed, among other things, the following:

- Mr. Parker had purchased a $75,000.00 certificate of deposit in the name of "1st Stop Bonding" to establish 1st Stop as a bonding company and competitor of WBC.
- 1st Stop had collected fees for bonds that individuals believed were written by Mr. Parker.
- Certain WBC client files were removed to the offices of 1st Stop.

A number of legal claims were ultimately asserted by WBC, including a request for injunctive relief and a claim for money damages based on an alleged breach of contract. An amended complaint was later filed in February 2016, and thereafter, Mr. Parker and 1st Stop filed answers.[2]

For his part, Mr. Parker filed a counterclaim against WBC incident to the filing of his February 23, 2016 answer. In his counterclaim, Mr. Parker alleged his contract with WBC obligated WBC to deposit certain commission funds into an "Agent Security Account." The counterclaim further alleged that WBC had breached this obligation and further claimed that WBC had spent funds in Mr. Parker's account without his knowledge or opportunity to object. WBC filed an answer to the counterclaim, specifically praying that it be dismissed with prejudice.

On September 21, 2017, the trial court held a combined discovery and pretrial conference, at which time counsel for WBC elected to take a voluntary nonsuit of WBC's claims. Although WBC asserts that this action was taken without its consent, an order dismissing WBC's claims against Mr. Parker and 1st Stop, without prejudice, was entered on October 4, 2017. This order provided that Mr. Parker would "proceed with his counterclaim in the capacity of a plaintiff." Effective January 10, 2018, WBC's counsel was temporarily suspended from the practice of law by the Supreme Court of Tennessee.

---

[1] Although the trial proceedings also involved another individual, Myisha O. Harris-Smith, no claims involving her are at issue in this appeal.

[2] Eventually, Mr. Parker and 1st Stop would file amended answers to the amended complaint.

Among other things, the suspension order directed WBC's counsel to "comply with Tenn. Sup. Ct. R. 9 in all respects." As is relevant here, this required giving appropriate notice of the suspension:

> By no later than ten days after the effective date of the order, the respondent attorney shall notify or cause to be notified by registered or certified mail, return receipt requested:
>
> (a) all clients being represented in pending matters;
> (b) all co-counsel in pending matters; and
> (c) all opposing counsel in pending matters, or in the absence of opposing counsel, the adverse parties,
>
> of the order of the Court and that the attorney is therefore disqualified to act as attorney after the effective date of the order except as permitted by Section 12.3(c).

Tenn. Sup. Ct. R. 9, § 28.2. Moreover, WBC's counsel was required to withdraw from representation:

> The respondent attorney shall within twenty days after the effective date of the order file in the court, agency or tribunal in which the proceeding is pending a motion for leave to withdraw or a motion or agreed order to substitute and shall serve a copy of the motion or agreed order on opposing counsel or the adverse party, if unrepresented, in the proceeding.

Tenn. Sup. Ct. R. 9, § 28.7.

Shortly after the entry of the suspension order, Mr. Parker moved the trial court to strike WBC's pleadings and enter a default judgment as sanctions. Mr. Parker submitted that such relief was warranted due to an alleged pattern of "dilatory and contumacious conduct." A certificate of service reflected that the motion was sent to WBC's counsel, but the motion was not received at that time. In fact, in a subsequent notice of rehearing filed on February 14, 2018, Mr. Parker's counsel stated as follows: "This matter is being reset because the motion and memorandum were inadvertently mailed to . . . counsel's previous address, and were returned to undersigned counsel undelivered. Accordingly, the motion and memorandum of law . . . are being reserved together with this notice to . . . counsel's correct address." The notice of rehearing stated that the default hearing would occur on March 2, 2018.

It does not appear from the record that WBC was aware of the motion for default filed against it or the scheduled hearing setting. WBC's counsel was suspended at the time the notice of rehearing was sent, and there is no indication that its counsel ever

informed WBC of the motion or motion setting. There is proof that WBC's counsel sent his client notice of his suspension in January 2018,[3] but again, there is no proof that notice was thereafter given by counsel as to the filing or setting of the motion for default. Further, we observe that the January 2018 letter giving WBC notice of counsel's suspension stated as follows: "In accordance with the Rules of Professional Conduct, I am required to file the enclosed Motion to Withdraw from Representation to allow an opportunity for the substitution of counsel on your behalf." The record does not show that this occurred, and the trial court thereafter proceeded to entertain the motion for default without any apparent knowledge that WBC's counsel had been suspended. After WBC failed to file a response to the motion for default and failed to appear in court, the trial court entered an order granting Mr. Parker's request for sanctions. The trial court held that "the motion should be granted as unopposed pursuant to Local Rule 26.04(d) and (g)." The court also took note of what it labeled as contumacious conduct on the part of WBC.

Although a final judgment would eventually be entered following a damages hearing, WBC, with the benefit of new counsel, later moved to set the court's default judgment aside. Among other things, WBC maintained that the entered default should be set aside because the default judgment was granted before WBC was even made aware that a motion had been filed. A hearing on the motion to set aside was held on November 30, 2018, the same day that the court heard a motion to strike re-filed claims of WBC that had previously been nonsuited. Orders on both of these matters were subsequently entered on December 10, 2018. With respect to WBC's attempt to reassert its previously nonsuited claims against Mr. Parker and 1st Stop, the court held that the "purported counterclaim to counterclaim is an impermissible pleading" and should therefore be stricken. As for the motion to set aside the default judgment, the trial court denied WBC's motion. This appeal followed.

## ISSUES PRESENTED

In its brief, WBC articulates the following issues for our review:

1.  Whether the record creates doubt as to whether the Order Denying WBC's Motion to Alter, Amend and/or set Aside Judgment entered December 10, 2018 reflects the independent analysis and judgment of the trial court.
2.  Whether the trial court erred in denying WBC's Motion to Alter, Amend and/or Set Aside Judgment based on the reasons attributable to the trial court from its skeletal November 30, 2018 oral ruling.

---

[3] WBC maintains that it did not discover the letter providing notice until after the hearing on the motion for default judgment.

- 4 -

3. Whether the trial court erred in denying WBC's Motion to Alter, Amend and/or Set Aside Judgment, even if the detailed findings and rulings of the party-prepared order can be attributed to the trial court.
4. Whether the trial court erred in granting Defendants' Motion to Strike WBC's Counterclaims.

## DISCUSSION

The primary issue with which we are confronted in this appeal is whether the trial court erred in refusing to set aside the default judgment entered against WBC. This requires us to construe WBC's request for relief in light of Rule 60.02 of the Tennessee Rules of Civil Procedure. *See* Tenn. R. Civ. P. 55.02 ("For good cause shown the court may set aside a judgment by default in accordance with Rule 60.02."). Rule 60.02 provides that:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

Tenn. R. Civ. P. 60.02. Although a motion to set aside a default judgment is a discretionary matter, *Nelson v. Simpson*, 826 S.W.2d 483, 485 (Tenn. Ct. App. 1991), "[t]rial courts should grant relief whenever any reasonable doubt exists concerning whether the default judgment should be set aside." *Id.* at 485-86; *see also Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn. 2003) ("A request to vacate a default judgment in accordance with Rule 60.02 should be granted if there is reasonable doubt as to the justness of dismissing the case before it can be heard on its merits."). Regarding requests for relief under Rule 60.02(1), relevant factors to consider are (1) whether the default was willful, (2) whether there is a meritorious defense, and (3) whether the non-defaulting party would be prejudiced by the granting of relief. *Henry*, 104 S.W.3d at 481.

In this case, Mr. Parker did not move for a default judgment on the basis that no answer had been filed by WBC, as WBC had filed an answer in defense of the case against it. Rather, Mr. Parker requested that a default judgment be entered against WBC as discovery sanctions. Although it is true that Rule 37.02(C) of the Tennessee Rules of Civil Procedure permits a trial court to enter a default judgment as a sanction against a party, *see* Tenn. R. Civ. P. 37.02, it is clear that "[j]udgment by default for failure to obey

an order to provide discovery is an extreme sanction." *March v. Levine*, 115 S.W.3d 892, 912 (Tenn. Ct. App. 2003).

Having reviewed the record transmitted to us on appeal, we agree with WBC that the entered default judgment should be vacated.[4]  As previously noted, when WBC moved to set aside the default judgment, it argued that the default was granted before it was even made aware that a motion for default had been filed.  We do not lightly dismiss this concern, especially in view of the trial court's own finding that a default judgment was entered, at least in part, due to WBC's failure to file a written response to the motion and failure to appear in court.  Indeed, as we have noted, the trial court specifically found that the motion for default "should be granted as unopposed."  Although we recognize that Mr. Parker sent the motion for default and notice of hearing to WBC's then counsel of record (and we do not fault him for doing so), we also take heed of the fact that WBC's counsel was suspended from the practice of law at the time these papers were ostensibly sent to counsel's correct address.  Further, there is no indication that WBC's counsel ever gave notice to WBC of the filing of the motion for default or of the motion setting.  In a declaration submitted in support of WBC's motion to set aside, WBC's owner specifically asserted that he had not been notified of the motion for default until April 2018, which was after the default had been entered.  Insofar as the record admits, WBC was effectively abandoned by its attorney following counsel's suspension.

Indeed, although WBC did receive some notice regarding its counsel's suspension, none of the notices it received gave any indication about Mr. Parker's pursuit of a default judgment prior to the entry of a default.  In January 2018, for instance, prior to the filing of the motion for default, WBC's counsel sent correspondence notifying WBC of his suspension and indicating that he had no intention of returning to the private practice of law.  Although WBC contends that it did not discover this correspondence until after the entry of the default judgment, we note that, even assuming the correspondence was received in January 2018, counsel's notification represented that he would be filing a motion to withdraw.  The letter clearly, therefore, expressed an intention to notify the trial court of the circumstances pertaining to counsel's suspension, something that never occurred prior to the entry of default.  The court was not notified of counsel's suspension prior to the entry of the default judgment,[5] and there is no indication that WBC was given notice that a default judgment was being pursued against it.  In essence, the default was entered without any meaningful chance for WBC to contest the allegations against it or to

---

[4] As explained herein, we are of the opinion that the default judgment should be set aside based on notice concerns incident to the setting of the hearing on the motion for default.  To the extent we do not address certain arguments or issues raised in the briefs of the parties, they are pretermitted as unnecessary to our disposition.

[5] In a letter dated April 23, 2018, *after* the entry of the default judgment, an attorney representing WBC's former counsel informed the trial court of his client's suspension.  The letter further indicated that, by copy, opposing counsel was being informed of the suspension as well.

advocate against the specific sanction that was pursued. There is no indication that WBC had any contemporaneous awareness of what was transpiring.

Certainly, as a general rule, errors of counsel are attributable to the client. *See Discover Bank v. Morgan*, 363 S.W.3d 479, 493 n. 26 (Tenn. 2012). Yet, under the circumstances of this case, we are of the opinion that fundamental unfairness exists in presently allowing the default judgment to stand where there was an absence of a real opportunity for WBC to contest and respond to the sanctions pursued against it. Again, although notice of the motion and motion setting was sent to WBC's then counsel of record, the record suggests that, prior to the entry of default (1) WBC's counsel never notified the court about his suspension as represented in the January 2018 correspondence to WBC and (2) WBC never received notification that a default judgment was being pursued against it. Effectively, WBC had been abandoned by its suspended lawyer at the time of the default judgment/sanctions proceedings, and in light of the trial court's decision to grant the default judgment in part because WBC had not opposed the motion, we are of the opinion that the entered default should be vacated.

In many respects, we are influenced by this Court's discussion in a prior opinion, where we noted that acts of gross negligence by an attorney will not be attributable to the client:

> [T]here are cases from other jurisdictions holding that an attorney's gross negligence will not be imputed to the client, and may be considered excusable neglect entitling a party to relief from a judgment, when the attorney has been suspended from the practice of law and failed to inform the client of the suspension. *See, e.g., Valley Bank of Frederick v. Rowe,* 851 P.2d 267, 269 (Colo. App. 1993) (holding that good cause existed to set aside summary judgment because of attorney's gross negligence where attorney did not inform client of attorney's suspension from practice of law); *Reno v. International Harvester Co.,* 115 F.R.D. 6, 8 (S.D. Ohio 1986) (holding that parties are not bound by the acts of their attorneys in cases of gross neglect and abandonment).

> In this case, the Tapleys diligently contacted their previously retained attorney regarding their case. Their attorney specifically assured them that he was adequately defending their cause. He further assured them that he had filed an answer and had even spoken with the judge in Shelby County. Moreover, he failed to inform the Tapleys that he had been suspended from the practice of law. This fraud committed upon the Tapleys by their former attorney constitutes gross neglect and distinguishes this case from those cases in which an attorney is merely negligent in handling a client's case.

- 7 -

*Terminix Int'l Co. v. Tapley*, No. 02A01-9701-CH-00028, 1997 WL 437222, at *4 (Tenn. Ct. App. Aug. 4, 1997) (footnote omitted).

Here, by suggesting to WBC in his January 2018 letter that he would file a motion to withdraw to "allow an opportunity for the substitution of counsel," previous counsel for WBC fostered an expectation that the trial court would be alerted to the situation and contacted before further proceedings progressed. Of course, as noted, counsel did not file a motion to withdraw prior to the entry of default, and there is no proof that counsel informed WBC about the motion for default prior to the entry of the sanctions against it. Only after a default judgment had been entered and a hearing on damages was set did an attorney for WBC's counsel contact WBC to inform it that "items" in the case were still being sent to WBC's counsel.

In our view, there is a reasonable doubt about the fairness in permitting the default to stand in light of the foregoing discussion. Given counsel's dereliction of duty and effective abandonment of his client incident to his suspension,[6] we are of the opinion that WBC should be presently relieved from the judgment that was entered. We do not hold that sanctions cannot be pursued against WBC by Mr. Parker, but WBC should have appropriate notice of any request for a default judgment or other sanctions. Its previous failure to challenge the request for sanctions is excusable under these circumstances, and it is appropriate that it be given the opportunity to challenge any request for relief sought by Mr. Parker. We therefore hereby vacate the judgment entered against WBC and remand for further proceedings on Mr. Parker's counterclaim.

Having addressed the propriety of the court's ruling on WBC's motion to set aside, we now turn to the trial court's decision to strike WBC's re-filed claims against Mr. Parker and 1st Stop. According to the trial court, the re-filed "Counterclaims" against Mr. Parker and 1st Stop, which had previously been nonsuited, were not permitted under the rules. Indeed, the trial court held that the "purported counterclaim to counterclaim is an impermissible pleading." Mr. Parker and 1st Stop agree with this conclusion in their appellate brief and argue that the nonsuited claims would need to proceed as a new action if re-filed. For its part, however, WBC argues that it was required to re-file its claims in the same lawsuit given the subject matter of the counterclaim filed against it. Having reviewed the relevant case law, we agree with the general argument set forth by WBC as it pertains to its claims against Mr. Parker.

Here, both Mr. Parker and WBC have claims arising out of the contractual relationship between them. As such, we are of the opinion that, once Mr. Parker elected to proceed on his counterclaim following WBC's initial nonsuit, WBC was required to

---

[6] Again, as we have noted, the Supreme Court Rules place certain notification and withdrawal obligations on suspended attorneys.

timely assert its claims against Mr. Parker in the present lawsuit.  As we discussed in a prior opinion:

> There is no question that had defendants been the original plaintiffs, that is, if they had brought their suit for rent against plaintiffs originally, plaintiffs here would have had to file their claim for damages as a compulsory counterclaim or would have been barred from thereafter asserting the claim.
>
> The question therefore presented to us is whether, when defendants in the original suit elected to proceed on their counterclaim after plaintiffs voluntarily dismissed their suit, it was necessary that plaintiffs' "nonsuited" claim be asserted by way of counterclaim. We are of the opinion that plaintiffs here were required to assert as a compulsory counterclaim their claim against defendants when defendants elected to proceed on their counterclaim.
>
> Rule 13, Tennessee Rules of Civil Procedure, is closely akin to Rule 13 of the Federal Rules of Civil Procedure. The purpose of both Rule 13(a), FRCP, and Rule 13.01, TRCP, are similar. Counterclaims serve "to avoid circuity of action, multiplicity of suits, inconvenience, expense, unwarranted consumption of the court's time, and injustice." 20 Am.Jur.2d Counterclaim s 14 (1965).
>
> "The purpose of the compulsory counterclaim rule is to insure that only one judicial proceeding be required to settle all those matters determinable by the same facts or law, that is, to bring all logically related claims into a single litigation, thereby avoiding multiplicity of suits." Id. s 15.
>
> When plaintiffs voluntarily dismissed their lawsuit, the effect was as if they had never filed suit. Plaintiffs, by electing to voluntarily dismiss their lawsuit, were cast in the position of defendants to the counterclaim asserted against them. Plaintiffs' original complaint was, by their action, dismissed and of no effect. Plaintiffs were then required to assert their counterclaim against defendants or forever be barred.

*Quelette v. Whittemore*, 627 S.W.2d 681, 682 (Tenn. Ct. App. 1981).

Nevertheless, despite our conclusion that WBC was required to reassert its claims against Mr. Parker once Mr. Parker elected to proceed on his counterclaim, we refuse to disturb the trial court's striking of WBC's reasserted claims.  There was no timely

attempt by WBC to reassert its claims against Mr. Parker, or 1st Stop for that matter, within the present lawsuit. Indeed, WBC did not attempt to reassert these claims until *after* a trial on damages had occurred and a final judgment had been entered. In fact, WBC did not reassert its claims against Mr. Parker or 1st Stop until nearly two months after its initial post-trial motion and three months after the entry of the final judgment. Notwithstanding the concerns surrounding the entry of the default judgment, WBC was aware that a final trial setting was set in this matter to determine damages. Therefore, it was clearly aware that Mr. Parker was proceeding on his counterclaim. Yet, no action was taken by WBC to reassert any claims of its own until several months later. We fail to see how such an action can be countenanced by this Court.[7] We find no error in the trial court's decision to strike the re-filed claims from this lawsuit.

## CONCLUSION

For the reasons stated above, we reverse the trial court's denial of the motion to set aside and vacate the default judgment. The trial court's decision to strike the re-filed claims of WBC is affirmed. The case is hereby remanded for such further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

---

[7] We observe that our Supreme Court has noted that "there is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn. 2001).

- 10 -